CROCKER v. CROCKER.

(Circuit Court, D. Massachusetts. December 15, 1899.)

No. 831.

HUSBAND AND WIFE—ACTION FOR ALIENATING HUSBAND'S AFFECTIONS.
     A wife cannot, under the laws of Massachusetts, maintain an action against a third person for merely alienating the affections of her husband.

On Demurrer to Declaration.

Frank D. Allen, for plaintiff.
S. K. Hamilton, for defendant.

PUTNAM, Circuit Judge. This action was brought by a wife for the alienation of the affections of her husband. There is no charge in the declaration of criminal conversation, and the identity of the surnames of the parties suggests that the case may be one of a class of which Hutcheson v. Peck, 5 Johns. 196, is an example. If so, the ultimate determination of the suit, if it can be maintained at all, would involve much careful consideration. Hutcheson v. Peck was brought by the husband against his wife's father for loss of consortium, and Kent, then chief justice, says, in his opinion, that in a

suit of that nature between such parties the verdict should be for the defendant, unless he had been actuated by improper motives. At common law, at the time the wife was regarded, for many purposes, if not essentially, as a servant of the husband, actions of this character were maintained on such broad rules that it was hazardous for a stranger to assist the wife, even in case of sudden, actual stress. The later views of the law, however, yielding to the principles of modern civilization, together with the urgent necessity of securing freedom of individual action, and the admitted fact that actions of tort will not lie merely for sentimental injuries, unaccompanied by any act unlawful in itself, make it the more difficult to maintain any suit of the character of the case at bar without specific proof that the defendant was actuated by improper motives. Passing by this, and coming to the question whether or not an action of this class will lie in a jurisdiction where modern legislation permits a married woman to maintain actions for torts as if sole, there has been so much discussion whether a married woman may maintain such a suit as, under reverse circumstances, the husband may admittedly do since Winsmore v. Greenbank, Willes, 577, decided in 1745, that we think we could not add anything by a protracted opinion. Moreover, the necessity of this is, we think, obviated by the evident leaning of the supreme judicial court of Massachusetts against the maintenance of a suit of this character, as shown by the decisions which have been cited to us. We therefore will only undertake to point out the peculiar history of the law from which flows the result which we have reached.

Poll. Torts (4th Ed.), than which there is no higher authority, at page 209, observes, in reference to the general topic, as follows:

"There seems, in short, no reason why this class of wrongs should not be treated by the common law in a fairly simple and rational manner, and with results generally not much unlike those we actually find, only free from the anomalies and injustice which flow from disguising real analogies under transparent, but cumbrous, fictions. But, as a matter of history,—and pretty modern history,—the development of the law has been strangely halting and one-sided."

It follows, therefore, that the law applicable to this suit cannot be worked out philosophically, and we must look to its history. This is given with sufficient fullness by Mr. Pollock, at pages 208 to 212, to render it unnecessary to attempt to add anything to what is there stated. It will be seen that the common law gives the husband three different suits arising out of three different classes of circumstances. One is that "per quod consortium amisit," arising out of a physical injury done the wife by trespass. The development of the law led to including in this class cases of injury to the wife's person arising from mere negligence. The next class of cases consists of those commonly known as actions of "criminal conversation." The basis of this is trespass vi et armis, on the theory that the wife is not a free agent or separate person, and that, therefore, her consent is immaterial, so that the adulterer is pursued as a mere trespasser. The inapplicability of this class of actions as a remedy for a wrong complained of by the wife is at once apparent when it is remembered that

it lies at common law, in behalf of the husband, even though the wife may be the actual seducer. The third class, as shown by Mr. Pollock at page 212, includes, theoretically, actions for enticing away servants, and originated either at the common law or under the statute of laborers (23 Edw. III.; A. D. 1349), as to which Mr. Pollock seems to be doubtful. This Mr. Pollock makes the basis of the action for merely persuading or enticing the wife to live separately from her husband without sufficient cause; but it is with this class that Hutcheson v. Peck, and also the suit at bar, if it can be maintained, must stand. In Lynch v. Knight, 9 H. L. Cas. 577, the proposition came up practically as a moot question. It was contended that, if there were some illegal act,—in that case a slander,—which is recognized by the law as laying the basis of an action, the wife might recover, in connection with it, for the loss of the consortium of her husband; but the case apparently went off on the ground that the loss of consortium was not, in that instance, the natural and reasonable consequence of the slander. In the course of the opinion of Lord Campbell, which was read by Lord Brougham after the death of Lord Campbell, the view is expressed that, independently of any peculiar basis for a suit, the wife stood with practically the same rights of action as the husband; but Lord Wensleydale, who, as compared with Lord Campbell, must be regarded as the correct lawyer, shows that there was no foundation for such an action in the principles of the common law. The result of all the opinions was practically expressed in the syllabus as follows:

"Quære: Whether a wife can maintain an action against a third person for words occasioning to her the loss of the consortium of the husband?"

The law in England has not progressed beyond this. Eversley, in the Law of the Domestic Relations (2d Ed.; 1896), so far as we can discover, neither makes any mention of Lynch v. Knight, nor of the topic which this case involves. Lush, Husb. & W. (2d Ed.; 1896), at page 10, says as follows:

"If it be correct that the husband might recover damages in certain cases for an injury to the wife, there seems to be no good reason why a wife should not, under similar circumstances, sue for an injury to her husband inflicting consequential damage upon herself."

This, however, does not attempt to state any rule of law, and the furthest that the author goes when he assumes to do this is as follows:

"It is conceived, therefore, that a wife could now recover damages for a libel concerning herself whereby she loses the consortium of her husband, though in the previous state of the law relating to married women it was considered doubtful whether such an action would lie."

The pith of this statement, even if sustained by the English authorities, is that, if the wife has, as the basis of an action, some other matter which the law recognizes as such, she may include in the damages to be awarded the loss of consortium of her husband, if it is a natural and reasonable consequence of the injury for which the law gives her a remedy.

We are left, therefore, so far as the common law is concerned, with the statement of it as given by Mr. Pollock, according to which each

class of actions by the husband is based on some principle of law peculiarly applicable to him, affording no analogy out of which the present suit can spring. At the common law, as we have already said, the husband had an action for a trespass committed on the person of the wife, and for the consequences of a negligent act through which the wife suffered personal injury; but, even in those jurisdictions where the wife has been given a sole cause of action for tort, it has been found necessary to apply to the legislature before a like action could be given her, even for the maiming of the husband, through which her pecuniary support, to which she has been accustomed, might be taken away. We believe that, so far as we can read the views of the supreme judicial court of Massachusetts,—which would guide us in this case if positively expressed,—the relief to be obtained by the wife in actions of this nature in this state must originate from the same source.

There is nothing in the declaration showing where the alleged cause of action arose; so that, although the plaintiff is described as a citizen of Rhode Island, suggesting that possibly it might have originated in that state, we have treated the case as though it arose in Massachusetts. The declaration is adjudged insufficient, the demurrer is sustained, and judgment will be entered for the defendant, with costs, according to rule 20.