V. E. HAMILTON, Appellee, v. W. A. McNEILL, Appellant.

**Husband and wife:** ALIENATION OF AFFECTION: RIGHT OF ACTION: EFFECT OF DIVORCE: STATUTE. The right of action for alienation of affection is a right acquired by the marriage, within the meaning of Code, section 3181, and by the terms of this statute the guilty party forfeits such rights by a decree of divorce.

**Same:** EFFECT OF DIVORCE: WHO MAY PLEAD SAME. Although the defendant in a suit for alienating the affection of plaintiff's divorced wife was not a party to the action decreeing her a divorce because of plaintiff's wrong, still he may plead the decree.

**Same:** DIVORCE: FORFEITURE OF MARITAL RIGHTS. The rights acquired by marriage and forfeited under Code, section 3181, by the party adjudged guilty in a decree of divorce, are not limited to those which would otherwise be owing to the guilty party by the other spouse, forfeiture of which would inure to the benefit of such spouse alone; and the section has no application or bearing on the question of alimony, custody of minor children or dower.

**Same:** CONSTITUTIONAL LAW: DUE PROCESS. The statute precluding a divorced spouse, who has been adjudged to be the guilty party, from thereafter maintaining an action for alienation of affection, does not deprive such spouse of a vested right without due process of law.

**Divorce:** JUDGMENT: CONCLUSIVENESS. The general rule that an adjudication is only binding upon the parties and their privies, does not apply to a decree of divorce in which the general public is concerned, to the same extent as an ordinary adjudication involving only private rights.

**Same:** STATUTE: ALIENATION OF AFFECTION. One against whom a decree of divorce has been entered on the ground of cruel and inhuman treatment is concluded by the judgment as the guilty party, within the meaning of the statute which provides that upon a decree of divorce such guilty party shall forfeit all rights acquired by the marriage relation; and a spouse so adjudged to be the guilty party can not avoid the effect of the decree, when pleaded in defense to a suit for alienating the affection of the other spouse, by showing that the decree was obtained upon false allegations and by collusion.

**Same:** CRIMINAL CONVERSATION. An action for alienation of affection based upon acts not in themselves criminal is essentially different from an action for criminal conversation, although both contain elements in common.

**Appeal:** ARGUMENT: NONCONFORMITY WITH RULES. Where the appellant's argument conforms to the real spirit of the rules it will not be stricken because of some formal departure therefrom.
Deemer and Ladd, JJ., dissenting. Weaver, J., specially concurring.

*Appeal from Mahaska District Court.—*HON. K. E. WILL-COCKSON, Judge.

TUESDAY, JANUARY 17, 1911.

ACTION for damages for alienating affection. There

was a verdict for plaintiff for $20,000. Defendant appeals.—*Reversed.*

*Geo. W. Seevers, William McNett,* and *Burrell & Devitt,* for appellant.

*John O. Malcolm* and *Thos. Cheshire,* for appellee.

EVANS, J.—The plaintiff was married in December, 1899. On March 2, 1906, his wife obtained of divorce from him in the district court of Mahaska County. Some time after the decree of divorce, the defendant herein married the plaintiff's former wife. Thereupon this action was brought. The defendant was an acquaintance of both parties for some years prior to the divorce. He was a bachelor about sixty years of age. At the time of his marriage to plaintiff's former wife, he was sixty-three years of age and she was twenty-six. The plaintiff charged in his petition herein that the defendant alienated the affections of his former wife by means which are epitomized in appellee's argument as follows: That beginning with the month of October, 1902, the defendant W. A. McNeill, began paying attention and showing courtesies to Hamilton's wife, which McNeill continued until he had alienated the affections of Hamilton's wife. That McNeill induced her to accept the use of his automobile and to ride with him therein; to accept gifts of flowers and money and other things, and by using other and various means, the exact description of which was unknown to the plaintiff, he "premeditatedly, wickedly, wrongfully, and unlawfully cultivated and caused to grow up between himself and the plaintiff's wife a relationship and social intimacy by means of which he gained her confidence, affection, and love." The petition further stated that McNeill obtained control of the plaintiff's wife's conduct and actions and acquired great influence over her; that he visited

her at frequent intervals at her house, while the plaintiff was absent during the business hours of the day and in the evening, when plaintiff was not at home, remaining at plaintiff's house with his wife, during the plaintiff's absence, frequently taking her out in his automobile, through the public streets of Oskaloosa, and in the country, both in the day and night time; that McNeill, by such means and influence, caused plaintiff's wife to withdraw her affection and companionship and love from the plaintiff, whereby the plaintiff's home was destroyed, his family broken up, and plaintiff deprived thereof, and the plaintiff lost the services, assistance, society, companionship, and love of his wife, because of the acts of McNeill.

The petition did not charge any criminal relation between the wife and the defendant. The defendant pleaded in effect a general denial. He also pleaded the facts as to the rendition of a decree of divorce against the plaintiff in favor of his wife, and averred that by the findings of such decree the plaintiff was the guilty party, and that he had thereby forfeited all right to maintain the present action. It is undisputed that in the divorce proceeding the plaintiff's wife charged the defendant husband (plaintiff herein) with cruel and inhuman treatment such as to endanger her life, and that the decree in her favor was based upon the finding of facts so alleged. The contention of the defendant herein was and is that the effect of such decree is to leave the plaintiff without any standing in this action. This contention is based in the first instance upon the following provision of section 3181 of the Code, which is as follows: "When a divorce is decreed, the guilty party forfeits all rights acquired by the marriage."

As against this contention the plaintiff replies that the section in question is without application to the case for the following reasons: (1) The adjudication in the divorce suit was binding only as between the parties thereto. (2) The rights involved were vested in the plaintiff prior

to the divorce, and the plaintiff could not be deprived thereof without due process of law. (3) That the allegations of the petition in the divorce case were false, and the findings of the decree were not true in fact and the decree was obtained by collusion between the parties, and is not binding as an adjudication even between them. (4) That the rights contemplated by the statute in question are such as would arise against the innocent party and not such as might arise against third persons. This in brief presents the contention at this point, and to this question we will direct our first attention.

I. We think it must be said that plaintiff's right, if any, to maintain this action, is necessarily a right "acquired by the marriage." The cause of action is one which

1. HUSBAND AND WIFE: alienation of affection: right of action: effect of divorce: statute.

could arise only out of and by virtue of the marriage relation. On the face of the statute therefore, the plaintiff, having been adjudged in the divorce decree to be the guilty party, forfeited "*all*" rights acquired by the

marriage." *Levins v. Sleator,* 2 G. Greene, 604; *Lucas v. Sawyer,* 17 Iowa, 517; *Maynard v. Hill,* 125 U. S. 190 (8 Sup. Ct. 723, 31 L. Ed. 654); *Nolin v. Pearson,* 191 Mass. 283 (77 N. E. 890, 4 L. R. A. (N. S.) 643, 114 Am. St. Rep. 605).

II. As against this it is argued that the defendant was not a party to the divorce decree, and is entitled to no benefits from the adjudication had therein. If this

2. SAME: effect of divorce: who may plead same.

contention be conceded, it falls short of saving to the plaintiff an affirmative right of action. The question at this point is not

who shall be the beneficiaries of the statute under consideration, but what consequences shall ensue to the "guilty party" as adjudged in a divorce decree. The statute has to do not only with the peculiar and individual rights of the parties to the suit as between themselves, but it has to do also with the public right and the public interest. If

the Legislature deemed it to the public interest, and so enacted, that in case of divorce the guilty party should forfeit "all rights acquired by the marriage," we know of no rule that would permit such forfeiture to be avoided by a showing that such forfeiture would operate to the benefit in a negative sense of an undeserving person. The following discussion in *Dillon v. Allen,* 46 Iowa, 299, is pertinent at this point: "The effects of statutes which make unlawful specified acts, upon persons violating them or aiding in their violation are not considered in their enforcement by the courts. If one offender suffers thereby and the other gains an apparent benefit, no argument can be drawn therefrom for suspending the operation of the law. This is an incident in the administration of justice against which neither Legislatures nor the courts can provide. The party suffering, being *in delicto,* can not complain of the operation of the law, for he merits the punishment prescribed for its violation. It can not be said that the law confers upon the other a benefit because of his violation of its provisions. What he gains comes to him as a punishment of the other party, not as a reward to himself." If the defendant herein were attempting to build for himself an affirmative case upon the alleged forfeiture, the question of his desert and the fact that he was not a party to the adjudication would be a more important consideration.

III. The construction contended for by plaintiff appellee is that the rights "acquired by the marriage" referred to in the statute are those rights and obligations otherwise owed to the "guilty party" by his spouse, the forfeiture of which would inure to the benefit of such spouse alone. The effect of this construction would be to obliterate this part of the statute and to leave it without any function whatever. Under other sections of the statute the questions of alimony and the custody of children are questions to be

3. SAME: divorce: forfeiture of marital rights.

determined by the court in each given case. The right of dower to either party is terminated by mere force of the decree of divorce and the right of either party, whether guilty or innocent, is neither greater nor less than the right of the other, so far as the question of dower is concerned. And this was the rule at common law before the enactment of this statute and was so recognized by this court in an early day. *Levins v. Sleator*, 2 G. Greene, 604, 609; *McCraney v. McCraney*, 5 Iowa, 232; *Marvin v. Marvin*, 59 Iowa, 699; *Boyle v. Latham*, 61 Iowa, 174; *Winch v. Bolton*, 94 Iowa, 573. This particular provision of the statute was first enacted in 1846 and appeared in the Code of 1851. It was omitted from the revision of 1860 and was not reenacted until 1873, when it was again included in the Code. This provision of the statute, therefore, serves no function with reference to dower or to alimony or to the custody of children. It is suggested by appellee that it was enacted at a time when the rule of the common law was in doubt, and that it was intended only to be declaratory of the comomn law as to the effect of a decree of divorce in terminating the right of dower. This suggestion is not without its plausibility so far as the original enactment in 1846 is concerned. One difficulty with this position is that there was no doubt as to the rule of the common law in this respect at the time of the reenactment of this provision in 1873, nor is the enactment declaratory of the common law in fact so far as the question of dower is concerned. This statute imposes a forfeiture upon the "guilty party" alone. If it were intended to determine only the question of dower, its clear implication would be that no forfeiture was imposed upon the innocent party in that respect; whereas the rule of the common law as announced by this court in its early cases holds dower to be barred to either party, whether guilty or innocent. See, also, *Barrett v. Failing*, 111 U. S. 523 (4 Sup. Ct. 598; 28 L. Ed. 505); *Pullen v. Pullen*,

52 N. J. Eq. 9 (28 Atl. 719) ; 2 Bishop on Marriage and Divorce, section 1633; 2 Scribner on Dower (2d Ed.) chapter 19, sections 20-23. It is our conclusion, therefore, that we can not hold this provision of the statute to be merely declaratory of the common law and as mere surplusage.

The point urged by appellee that the application of this provision to the case at bar would be a violation of the Constitution in that it deprives the plaintiff of a vested right of property without due process of law

4. SAME: constitutional law: due process.

is not tenable. The statute provides for no forfeiture except after due process of law. The divorce proceeding resulting in a decree constituted due process of law. It was none the less so because defendant made default. The statute gave to him full warning as to the consequences in case of an adverse decree. Possibly the very purpose of the statute was to discourage default and to encourage a contest and a presentation thereby of the point of view of both parties. This would aid the court in ascertaining the real truth and would operate to the public interest.

IV. Particular stress is laid by appellee upon the proposition that a decree of divorce is binding as an adjudication only as between the parties thereto, and that it is not binding as between either party and

5. DIVORCE: judgment: conclusiveness.

a third party. The plaintiff pleaded in his reply that the allegations of the petition in the divorce case were false and that the findings of the decree were not in fact true. He averred that he was not in fact the guilty party although the decree found him so, and that he was not guilty of the acts of cruelty charged against him in the decree. He contends here for his right to contradict the decree as between him and the defendant. The general rule that an adjudication is binding as such only upon the parties to the litigation and their privies may be taken for granted. This general rule, however,

has various and varying exceptions which we will not stop now to note. The difficulty with applying such rule to a divorce case is that, in the eyes of the law, the parties to the case are not the only parties in interest in the litigation. In ordinary litigation, the parties to the case may waive proofs and concede facts and stipulate for judgment. In such a case the court may properly grant to plaintiff all the relief which is not resisted by the defendant. In a divorce case, the court is charged with a special duty toward the public. It must look beyond the wishes of the parties. It must often ignore admissions and be watchful against collusions, and must ascertain as near as may be the very truth, even though it result in the defeat of the mutual wishes of both parties. Unless the real facts as the court shall find them from the evidence justify a divorce under the law, then it must be refused, even though both parties desire it. In such a case, the court is dealing with something more than the private rights of the parties to the case. The marriage to be dissolved is not a mere contract, but is a status. In such status, the public interest is involved in a very sensitive way. A decree of divorce dissolves not only the marriage contract, but changes the status of the parties and thereby their relation to the public as well as to each other. The binding force of such decree necessarily enters into the future relations of the parties, not only as between themselves, but affects also their relations with third parties. The parties to the case may enter into other marriages and the validity or voidability of such marriages, as the case may be, must necessarily depend upon the validity of the decree of divorce. If a third party may not rest upon the verity of a decree of divorce, then it must logically follow that such decree has not been effective to establish or to change the status of the parties thereto. If we were to adopt the theory of the appellee in this respect, it would deepen the mire

through which the administration of the divorce law is too
often drawn. The burden laid upon the courts to admin-
ister this law strictly according to its very spirit is neces-
sarily an onerous one in default cases. False testimony
may be adduced. Important facts may be withheld.
The defaulting defendant offers the court no aid. Too
often he desires that a decree of divorce be entered. It is,
therefore, always possible that a decree may be found upon
false testimony be the judge diligent as he may. If, there-
fore, a defendant thus willingly obtain his freedom from
the marriage bond, either by collusion or by silence at the
trial, there is much reason why the adverse findings of the
decree against him should bind him for all time. Such a
rule would tend at least to deter the evil practice. On the
other hand, if he may temporarily assent to falsehood
either by collusion or silence in order to enable a decree of
divorce to be obtained, and then afterwards in his freedom
from the bond, repudiate to his own advantage the facts
upon which the decree of dissolution was entered, such a
rule can tend only to the great reproach of the adminis-
tration of the law.

V. In the case at bar the plaintiff herein contends
that the decree of divorce was obtained not only upon
false allegations in the divorce petition, but that it was
obtained by collusion between the parties
6. SAME:
statute:
alienation of
affection.
thereto, and that it is void therefore, as be-
tween the parties themselves. The testi-
mony in the case is undisputed that the plaintiff herein
counseled with and employed the attorney who brought
the divorce suit for the wife against him. We do not
think this fact aids the plaintiff in the present action.
On the contrary, it furnishes an additional reason why
he should be forbidden to show to his own advantage the
falsity of a decree which he collusively obtained. It is
abhorrent to the judicial sense and subversive of legal
morals that a defendant may aid the plaintiff in ob-

taining the solemn . conclusions of the court in the
form of a decree of divorce and may afterwards, in
another action in the same court, flout the decree before
the jury, and say, "Gentlemen, this is all false. The judge
did the best he could, but we wanted the decree and we
fooled him. I have never asked to set aside the decree and
I do not ask it now. I only want you to say that its find-
ings. are not true in fact, and that I was never guilty of
any of the charges sustained against me." It may be well
to observe here that the facts appearing from the testi-
mony in this record, if proved in the divorce proceeding,
were abundant to sustain the allegations of cruel and in-
human treatment and to warrant the decree. The facts
appearing here show more than was charged in the divorce
petition. The testimony adduced against the plaintiff
herein in this action tended to show not only cruel con-
duct on his part toward his former wife, but tended
strongly to show adultery. This testimony is all denied
by the plaintiff, and especially does he deny any criminal
relations with other women; although he admits his asso-
ciation with a strange woman on one occasion, which was
clearly inconsistent with virtuous conduct, it clearly ap-
pearing that the woman in question was a lewd woman.
We are not passing now upon the relative weight of the
evidence. These general facts are mentioned only to throw
light upon the applicability of the rule which we are dis-
cussing.

We reach the conclusion that the general rule that an
adjudication . is binding only upon the parties thereto and
their privies is not applicable to a divorce decree as broad-
ly as to an ordinary adjudication which involves only pri-
vate rights. Without attempting to define an exact rule
applicable in all cases to divorce decrees, we reach the con-
clusion that under the undisputed showing in this case,
the. plaintiff can not be heard in this action to impeach
the verity of the decree of divorce nor to deny the grounds

upon which the decree was obtained, for the purpose of avoiding the statutory forfeiture; and that he must be conclusively deemed to be the "guilty party." For cases bearing upon the question, see *Karren v. Karren,* 25 Utah, 87 (69 Pac. 465, 60 L. R. A. 294, 95 Am. St. Rep. 815); *Ellis v. Ellis,* 55 Minn. 401 (56 N. W. 1056, 23 L. R. A. 287, 43 Am. St. Rep. 514); *Moor v. Moor,* (Tex. Civ. App.) 63 S. W. 347; *Gordon v. Dickison,* 131 Ill. 141 (23 N. E. 439); *Orth v. Orth,* 69 Mich. 158 (37 N. W. 67).

VI. We turn now to another phase of the discussion. In *Wood v. Mathews,* 47 Iowa, 409, it was held that the plaintiff therein might maintain an action for damages against defendant for criminal conversation with his former wife during the marriage, even though the wife had obtained a decree of divorce against the suing plaintiff before the commencement of his action for damages. It is properly argued that the reasoning which applies section 3181 of the Code to the present action would necessarily require the application of the same secton to an action for criminal conversation. Such an application of the statute would run counter to the holding in the above case. This argument has much force, and we have given it much consideration. An examination of the opinion in the *Wood* case and the record upon which the case was submitted discloses the fact that the attention of the court was not directed at all to the statutory provision which is now under consideration and the case was manifestly decided without reference thereto. The point which appears to have been decided in the opinion was impliedly conceded by appellant in his argument, and the opinion of the court consists of only a dozen lines. It is urged by appellant that inasmuch as the point now presented was not considered in that case and inasmuch as no rule of property was settled thereby, the cited case should not foreclose

7. SAME: criminal conversation.

our present consideration of the statute, and that in such case we should not deem ourselves bound by the opinion in the prior case. Cases tending to support this contention are: *Washburn v. Insurance Co.*, 110 Iowa, 423; *Blackman v. Wadsworth*, 65 Iowa, 80; *Remey v. R. R. Co.*, 116 Iowa, 133. The decision in the *Wood* case is announced without discussion and purports to be based upon two precedents: *Dickerman v. Graves*, 6 Cush. (Mass.) 308 (53 Am. Dec. 41), and *Ratcliff v. Wales*, 1 Hill (N. Y.) 63. Strange to say, neither case gives the slightest support to the proposition now under consideration, nor was there at that time any precedent in the books in support of the same.

We think, however, that we are not called upon at the present time to say whether the *Wood* case should be overruled. As before indicated, the present action is not an action for criminal conversation. The case presented by the petition is one of simple alienation by alleged acts and arts not in themselves criminal. Such an action is essentially different in its nature from an action for criminal conversation, although both contain some elements in common. The acts and arts charged in the petition herein were in themselves not actionable. They could only become so when they should result in the alienation of the affections of plaintiff's wife; whereas an act of adultery which furnishes the basis of an action for criminal conversation is in itself immediately criminal and actionable, and a cause of action based thereon is not necessarily dependent for its maintenance upon the future relations of the parties to the marriage. For a discussion of the distinction between the two actions, see *Kroessin v. Keller*, 60 Minn. 372 (62 N. W. 438, 27 L. R. A. 685, 51 Am. St. Rep. 533); *Houghton v. Rice*, 174 Mass. 366 (54 N. E. 843, 47 L. R. A. 310, 75 Am. St. Rep. 351); *Crocker v. Crocker* (C. C.) 98 Fed. 702; note to *Nolins v. Pearson*, 4 L. R. A. (N. S.) 643. The dis-

tinction is recognized, also, in *Wood v. Mathews, supra.*
If, therefore, we should feel bound to follow the case of
*Wood v. Mathews,* and thereby to ignore the statute under
consideration in its application to an action for criminal
conversation under the rule of *stare decisis,* it does not
follow that we should be carried beyond the *Wood* case by
mere force of analogy and refuse to apply the statute to
a case of simple alienation where no criminality is in-
volved.   There are some cogent reasons remaining for the
application of the statute to a simple alienation case which
do not apply to an action for criminal conversation.   If
the acts complained of are actionable only as they result
in the alienation of the affections of the wife, and if, on
the other hand, the plaintiff himself has been guilty of
such cruel conduct as to endanger the life of his wife,
how is he to say that such cruel conduct did not con-
tribute to the alienation of which he complains?   *Chris-
tiansen v. Thompson,* 123 Iowa, 717.   Without deciding,
therefore, whether *Wood v. Mathews, supra,* should be
overruled, we only hold now that we will not extend the
holding there made to an alienation case not involving
criminal conversation.   It may be noted here that the
only alleged precedents which are brought to our atten-
tion wherein it is claimed that the "guilty party" in a
divorce decree was permitted to maintain an action for
damages for loss of affections of the wife are *Michael v.
Dunkel,* 84 Ind. 544 (43 Am. Rep. 100); *Wales v. Miner,*
89 Ind. 118; *Prettyman v. Williamson,* 1 Pennewill
(Del.) 224 (39 Atl. 731).   Only the first citation is in
point.   In the second *(Wales v. Miner,* 89 Ind. 118) the
divorce was decreed to the husband, plaintiff in the dam-
age suit; although the divorce suit had been commenced
by his wife.   The plaintiff in the damage suit was, there-
fore, not the "guilty party" under the decree.

In the *Prettyman* case, 1 Pennewill (Del.) 224 (39
Atl. 731), no adjudication or decree was involved.   After

the commencement of the alienation suit the Legislature enacted an act divorcing plaintiff and his wife from the bonds of matrimony. Whether such enactment included any finding of facts does not appear. In the statement of the issues by the court in the alienation case, it is referred to as follows: "An act of the General Assembly of the state passed May 26, 1897, divorcing the said Wm. F. Prettyman and his wife from the bonds of matrimony, and which act the defendant contends constitutes a bar to the present action, which was commenced May 5, 1897." The holding or opinion in the *Prettyman* case was that of the Superior Court sitting as a trial court, and was not the holding of the Supreme Court.

Neither of the two states where these decisions were had (Indiana and Delaware) had any statute corresponding to section 3181. All of the cases cited were cases based upon criminal conversation. No case is brought to our attention from any state wherein a "guilty party" in a divorce decree ever maintained an action for damages for simple alienation of affections as distinguished from criminal conversation. The case at bar is, therefore, unique in that respect, and opens a new door of litigation.

In *Gleason v. Knapp*, 56 Mich., 291 (22 N. W. 865, 56 Am. Rep. 388), the plaintiff who brought an action for criminal conversation was nonsuited by the Supreme Court of Michigan because his wife had obtained a decree of divorce against him prior to the bringing of the action. Michigan had no statute corresponding to section 3181, but the holding was based upon the broad ground that inasmuch as he failed to plead such fact in the divorce action he could not be heard to complain of it later in the form of an action for damages; it appearing that he knew of the alleged adultery before the decree was obtained. It should be said for the case at bar that the plaintiff claims that he learned of the defendant's acts for the most part after the decree of divorce.

In the discussion of the questions here involved, we have not attempted to deal with specific exceptions or as-signments of error.    The questions discussed were all involved and presented in the pleadings, in the admission of testimony, and in instructions given and refused, and proper exceptions were taken. The conclusions we have reached upon the questions here discussed are decisive. If we are right therein a verdict should have been directed for the defendant.    Many other questions are argued which we need not discuss in view of the foregoing conclusions reached.    We are disposed, however, to say that if there had been no other error in the record a new trial ought to have been granted because of the excessive character of the verdict.

VII.    Finally our conclusions may be summed up in brief form as follows:    (1) That the right of action for damages for alienation of affection is a "right acquired by the marriage" within the meaning of section 3181 of the Code.    That by the terms of this statute the "guilty party" forfeits such right.    (2) That the forfeiture declared by the statute must be recognized by the court regardless of any advantage resulting thereby to any de-endant.    This is so not because of any affirmative right conferred on the defendant, but because of the absence of right in the plaintiff.    And the forfeiture is properly pleadable as such by a defendant.    (3) That the decree of divorce shown in this record fixed the status of the plaintiff herein as the "guilty party" therein within the meaning of said section 3181.    The question at this point is not so much whether the decree is conclusive as between plaintiff herein and third parties, and as affecting alleged affirmative rights of such third parties, but whether the decree is conclusive upon the plaintiff himself as bringing him within the operation of the statute in question.    We hold it to be conclusive upon plaintiff in the latter respect, and that he became thereby subject instanter to the forfeit-

ure declared by the statute.   (4) That plaintiff's plea that the divorce was obtained by his own collusion will not avail to relieve him from its conclusiveness while it remains in force.   (5) We recognize that our conclusions herein are not in harmony with the result announced in *Wood v. Mathews,* 47 Iowa, 409.   In that case, however, the statute under consideration was not brought to the attention of the court either by pleading or argument, nor did the court assume to construe the statute nor to pass upon it in any way.   It was manifestly overlooked both by counsel and court.   The point was decided without discussion and erroneously based upon two supposed precedents which were not such in fact.   Under these circumstances we would not be justified in ignoring the statute under the authority of the *Wood* case.

VIII.   The foregoing represents the views of only a majority of the court, as will appear from the dissenting opinion filed herewith.   In view of some features of the discussion appearing in the dissent, the writer hereof deems it appropriate to add a few further observations without assuming at this point to speak for any other member of the court.   The dissent is professedly emphatic and permeated with feeling.   It is unfortunate at best, though sometimes inevitable, that the majority opinion should appear to the minority, not only as erroneous, but as absurd. Such a situation doubtless renders both the emphasis and feeling of a dissenting opinion quite pardonable.   But it calls for scrupulously fair argument from the dissent as well as from the majority lest the majority opinion be made to appear other than it really is.   To the view of the writer the dissenting opinion is fairly subject to question in this respect at one or two points.

On the general proposition of the majority that the "guilty party" may not maintain this action it is said in the dissent that "there are very many cases which hold exactly to the contrary."   In support of this emphatic state-

ment several citations are made. As to the first three citations, we have already commented in the foregoing pages. As to the additional citations thus made, nearly all of them are erroneous in fact. Reference is now had to the following cases thus cited therein: *Postlewaite v. Postlewaite,* 1 Ind. App. 473 (28 N. E. 99); *Clow v. Chapman,* 125 Mo. 101 (28 S. W. 328, 26 L. R. A. 412, 46 Am. St. Rep. 468); *Keen v. Keen,* 49 Or. 362 (90 Pac. 147, 10 L. R. A. (N. S.) 504); *Beach v. Brown,* 20 Wash. 266 (55 Pac. 46, 43 L. R. A. 114, 72 Am. St. Rep. 98); *Haynes v. Nowlin,* 129 Ind. 581 (29 N. E. 389, 14 L. R. A. 787, 28 Am. St. Rep. 213); *Smith v. Smith,* 98 Tenn. 101 (38 S. W. 439, 60 Am. St. Rep. 838). None of the above citations sustain the proposition. In none of these cases does the "guilty party" to a divorce appear as plaintiff. In each of the first four the plaintiff in the damage case had obtained the decree of divorce. In the *Haynes* case the plaintiff was a married woman, and brought her action for alienation during the existence of the marriage. The *Smith* case was like the *Haynes* case in that the action was brought by a married woman as plaintiff during the existence of the marriage relation. It may be stated here, also, that the case of *Knickerbocker v. Worthing,* 138 Mich. 224, (101 N. W. 540), was an action for criminal conversation, and was brought and tried in the lower court during the existence of the marriage relation. The plaintiff therein had previously defended successfully in the lower court a divorce suit brought against him by his wife. The wife prosecuted an appeal to the Supreme Court and obtained a reversal of the decree below. Before such reversal was obtained, however, the plaintiff husband had prosecuted to judgment his case for criminal conversation.

Of course, in view of the fact that the majority opinion is based upon our statute, the question of outside authorities is not controlling, although appropriate. And in view

of the claim made in the dissent that the majority puts the statute to an "unholy service" and operates as a protection to "infamy," and in view of the call that is made upon the Legislature for relief from the operation of the statute as so construed, an examination of the authorities outside of Iowa is quite interesting. What is disclosed thereby? There are divorces abundant and too many. There are alienation suits—hundreds of them; perhaps thousands. By whom have these alienation suits been maintained? Those maintained by the "guilty party" after divorce can be counted on the hand, with a margin to spare. In no less than forty states such a suit by the "guilty party" is unknown to their reports. And this, too, in the absence of statute in most of such states. Is this a record of infamy? "The absence of precedent is precedent." *Thomas v. Adams Ex. Co.,* 1 Pennewill (Del.) 142 (39 Atl. 1015).

Without pressing the query whether the call for legislative relief, above referred to, does not put a dissenting opinion to an inappropriate function, it is sufficient to say now that the question of the propriety of the statute lies wholly within the legislative judgment. While the statute remains it must be given effect by the court. It is too definite and substantial to be blown away by mere indignation or to be reduced to ashes by heat of denunciation.

The statement of the dissent that the holding of the majority is made to depend "upon a supposed rule of public policy or by some species of estoppel" is not accurate nor quite fair. The majority holding is based upon the *statute* and upon that alone as all-sufficient. The only question of public policy involved is that of the statute; and the only question of estoppel involved is that which inheres in the decree of divorce. These particular terms are not used in the majority opinion, but originate in the dissent. The extended discussion on these subjects is largely based upon a mistaken construction of the majority

holding.   Much of it is not fairly applicable to the major-
ity holding, but is a deflection of the argument toward an
improvised target.   In so far as the legislative policy in-
volved in the statute is called in question, we defend it
as appropriate and sound.

IX.   The defendant has moved to strike appellant's
argument for want of conformity to the rules and such
motion has been submitted with the case.   We think the

**8. APPEAL:** **argument: nonconformity with rules.** motion not well taken.   Appellant's argu-
ment presents some formal departure from
the rules in its method of presenting the
case.   The real spirit of the rules, however, is complied
with.   The case is very voluminous, having occupied six
weeks' time in its trial.   Its presentation here as well as
the consideration of it by us has been very arduous.   It
has been presented to us by both sides with great thor-
oughness and with exceptional clearness.   The motion to
strike appellant's argument will therefore be overruled.

For the reasons indicated, the judgment below is *re-
versed.*

WEAVER, J. (specially concurring).—I concur in the
result announced in the majority opinion and in much of
the argument by which it is sustained.   I especially concur
in the construction which it places upon the statute which
makes a decree of divorce work a forfeiture by the guilty
party of "all rights acquired by marriage."   Among the
rights a husband "acquires by marriage" is the right to
maintain action for damages against a person who alien-
ates the affections of his wife.   It is a right peculiar to
the marriage relation, and if that marriage be dissolved
because of his fault or wrong, the statute says in effect that
the right of action which was incident thereto ends with it.
In other words, the statute makes no exception by which
*any* right whether right of action or other right acquired
by the marriage, shall survive to the husband because of

whose fault or guilt a divorce has been decreed. On
the contrary, it expressly provides that he shall forfeit
*"all* rights" so acquired. To hold that appellee did not so
forfeit all such rights, but that when he went out of
the divorce court legally adjudged guilty of wrong which
forfeited his right to his wife and all rights which
he acquired by his marriage with her, he neverthe-
less retained *this* right, would be to amend the stat-
ute by dictum · of the court. Appellee's contention
that the rights so forfeited by the husband are property
rights only is a very inadequate answer to this proposition.
It ought to be enough to say that the statutory provision
expressly relates to all rights having their derivation in
the marriage relation. Moreover, the suggestion loses
all point when we stop to consider that under the laws of
this state the rights acquired by a husband in the prop-
erty of his wife are inchoate only, and depend for their
existence upon the existence of the marriage relation at
the time of the wife's death, and therefore the decree
which dissolves the marriage has the instant effect to ter-
minate all such rights. Such being the case, we may pre-
sume the Legislature knew the statute was unnecessary to
protect the property right of parties to a divorce, and this
statute was intended to mean precisely what it says. Nor
does this construction of the act work any obvious wrong
to the divorced husband. If, as appellee now undertakes to
say, he was a dutiful husband who never gave his wife
ground for the divorce which he assisted her in obtaining
and was robbed of her love by the machinations of the ap-
pellant, he had only to speak the truth and show his hand
to secure the dismissal of that action, and retain the right
to salve his wounded honor by the recovery of a cash
equivalent. As he did not choose that course, but volun-
tarily elected to play the part of a husband whose mis-
conduct entitled his wife to a dissolution of the marriage,

he ought to be content to accept the decree which he invited, with all its statutory trimmings.

Nor can I believe there is anything in public policy nor any principles of morals which should impel the court to ingraft an implied exception upon the statute. The case before us is an impressive illustration of the evils which must follow the establishment of the rule for which appellee contends. The court in which a divorce proceeding is pending affords the parties thereto every reasonable opportunity to test the truth and merit of their matrimonial controversies. If the husband who is charged with misconduct justifying a dissolution of the marriage has any defense to such accusation, or any showing to make in palliation or mitigation, there is the place to make it and prove it. If he seeks to justify or recriminate because of the misconduct of his wife there is the place to plead it. There they stand on equal footing, and each may be heard in person and by witnesses, and have their respective rights and interests guarded by counsel. When this opportunity has been given and the court has found for one party and against the other, and adjudged one of them guilty of such violation of the marriage obligation as to justify a divorce, it is but simple justice to provide that, so long as that decree remains in legal force and effect, he against whom it is announced shall not be heard to assert any right based upon or derived from the marriage contract which his own wrong has terminated. To say that a husband may submit to a divorce on the ground of his own misconduct, and then in a suit against a third person in which his wife is not a party assert a right based upon the marriage relation which he has forfeited, put her character and virtue as a wife in issue, and secure for himself what may be termed a moral reversal of the decree rendered against him, and brand with infamy the woman whom the court has once vindicated, would be to announce a rule unworthy of

place in any enlightened scheme for the promotion and administration of justice.

Concerning another question presented by this appeal I am ready to concede that the case before us is not one coming within the ordinary rule of *res adjudicata,* which requires for its application identity of parties and subject matter, and I do not understand the majority opinion as holding otherwise. But the effect of a decree of divorce is not limited to the husband and wife who are parties thereto. The state—the public of which these persons are a part—has a direct interest therein. It is in the interest of good morals and common decency that litigation involving domestic infelicity, crimination, and recrimination between husband and wife be limited within the narrowest possible bounds, and in my judgment sound public policy will be best promoted by holding that he against whom a divorce is decreed shall not be heard in any other or collateral proceeding, whether his former wife is or is not a party thereto, to call in question the merits of any controversy between the former husband and wife which was or might have been settled as between themselves by the decree which severed their relations.

DEEMER, J. (dissenting).—Not content with the simple conclusion that because plaintiff's wife obtained a divorce from him before he commenced this action for alienation of affections, his right of action at any time existing has been forfeited by reason of the provisions of section 3181 of the Code, quoted, the majority proceed to consider other questions, and to make pronouncements thereon which to my mind are erroneous and to make distinctions which I am convinced are unsound. For example, to avoid the effect of our former decision of *Wood v. Mathews,* 47 Iowa, 409, the majority make a distinction between actions for alienation of affections and for criminal conversation, which is well enough in its place, but which I regard as

entirely unsound for the purpose of avoiding the effect of
the decision in the *Wood* case. That I can not be mis-
taken in this will appear from a reading of the sixth para-
graph of the majority opinion. If section 3181 of the
Code is applicable to an action of criminal conversation,
it is also applicable to an action for alienation of affec-
tion. Any attempt to distinguish the two actions to get
away from the decision in the *Wood* case is to my mind
futile.

The majority expressly say that we are not called
"upon at the present time to say whether the *Wood* case
should be overruled." This expression was doubtless made
because the majority were of opinion that section 3181
might apply to actions for alienation of affections, although
inapplicable to actions for criminal conversation. I can
not agree to this, and expressly dissent from that conclu-
sion. I shall show that for some purposes actions for
criminal conversation and for alienation of affections
should be distinguished, but they are not distinguishable
in the application of section 3181 of the Code. Although
denying that such is the effect of the decision, I am very
sure that the majority overrule *Wood v. Mathews, supra.*
If that case recognizes the distinction pointed out by the
majority, I have failed to find it in the opinion.

II. For some purpose the majority take up decisions
from other states which, so far as shown, have no statutes
similar to our section 3181, for the purpose of showing
that without such a statute as the one now under con-
sideration a husband, whose wife has obtained a divorce
from him, can not maintain an action of criminal conver-
sation or for alienation of affections occurring before
the cause for divorce arose. This must be on the theory
of estoppel, former adjudication, or by reason of public
policy. Reference to the decision in the Indiana, Dela-
ware, and Michigan cases is conclusive on this point. The
Michigan case, which is cited in support of the opinion,

is based upon one or the other of these grounds, and the majority concede that, although that state has no statute like our section 3181, nevertheless the opinion is cited as a precedent for holding that plaintiff can not recover. I shall have more to say of this case before concluding this statement of my views. The majority say, in unequivocal language that there is no case wherein *a guilty party* in a divorce decree ever maintained an action for damages for simple alienation of affections as distinguished from criminal conversation. I might well retort that there is no opinion, aside from the one filed by the majority in this case, which holds that a divorce obtained by a wife against her husband destroys a right of action already existing in his favor against a stranger for alienation of his wife's affections or for criminal conversation. The cases, in so far as they have spoken upon the subject, are all the other way, and I may well suggest here for the purpose of this inquiry that the distinction between actions of criminal conversation and for alienation of affections is not sound. If the citation of the Michigan case is not for the purpose of sustaining the decision apart from section 3181 of the Code, then I do not know why it is referred to.

III. Apart from the general conclusion reached by the majority I must dissent from the thought that aside from section 3181 the decision of the court in the divorce case may be relied upon by defendant as a complete defense to plaintiff's action. The reasoning to support this proposition is to my mind unsound. This position, if sound, must be based upon the theory of estoppel by judgment. It is essential to the doctrine of estoppel by judgment that it be mutual. That is to say, one can not take the position that the decree is conclusive if it operates to his benefit, but inconclusive and of no effect if it operates to his disadvantage. Now, if the majority are correct, then to be logical, we must hold that if plaintiff's action had been for criminal conversation, and, if after his

right of action became complete, he brought a divorce suit against his wife, charging adultery with the person who he claimed had been guilty of criminal conversation, and obtained a decree upon that ground, this decree would be conclusive upon the defendant in the criminal conversation case, and he could not disprove either the fact of marriage at the time he committed his act of adultery with the alleged wife, nor could he prove that he did not have intercourse with her. Such a holding would, I think, be rather startling to the legal mind. The following cases squarely hold that a decree of divorce is not conclusive as to strangers: *Corry v. Lackey,* 105 Mich. 363 (63 N. W. 418); *Gill v. Read,* 5 R. I. 343 (73 Am. Dec. 73); *Jacobson v. Miller,* 41 Mich. 90 (1 N. W. 1013).

In the former case it is said: "It appears that defendant's wife procured a divorce from him on the ground of extreme cruelty, and it is contended that he can not now be heard to say that he was not guilty of this cruelty. We do not think this contention can be allowed. As between the parties to that litigation the finding of fact is final and conclusion, but between plaintiff and defendant it is not." None of the cases cited by the majority announce a contrary doctrine.

*Karren v. Karren,* 25 Utah, 87 (69 Pac. 465, 60 L. R. A. 294, 95 Am. St. Rep. 815), was an action between the original parties to a divorce proceeding, and the effect of the original decree upon strangers was in no manner involved or decided. The case is not in point upon any proposition here involved.

*Gordon v. Dickison,* 131 Ill. 141 (23 N. E. 439), simply holds that a wife divorced on the ground of desertion is not barred of dower under a statute providing that a divorce shall not bar the innocent party's right of dower, although the wife, after the divorce commits adultery. I quote from that decision as follows:

Section 14 (Rev. St. c. 41) provides: 'If any husband or wife is divorced for the fault or misconduct of the other, except where the marriage is void from the beginning, he or she shall not thereby lose dower, nor the benefit of such jointure; but if such divorce shall be for his or her own fault or misconduct, such dower or jointure, and any estate granted by the laws of this state in the real or personal estate of the other, shall be forfeited.' Section 15 provides: 'If a husband or wife voluntarily leave the other and commit adultery, he or she shall be forever barred of dower, and of the benefit of any such jointure, unless they are afterwards reconciled, and dwell together.' It will be observed that section 14, without using any qualifications or exceptions whatever, save only where the marriage was void from the beginning, preserved the right of dower where the divorce is granted for the fault or misconduct of the other. Here was a decree of divorce wherein the court had determined that the husband had deserted and abandoned his wife without any reasonable cause, and that such abandonment had continued for a period of two years; and the divorce was granted for the fault and misconduct of the husband. The complaint by the decree, clearly falls within the terms of section 14, which protects her dower rights; and, unless the offered evidence would bring the case within section 15, *supra,* the court ruled properly in excluding it. Section 15 does not provide that where the wife is driven from the home of the husband, and, after she is thus driven away, commits adultery, that she shall be barred of dower; nor does the statute provide, where the wife is deserted and abandoned, if after such desertion and abandonment she commits adultery, she shall be barred of dower. Such is not the language of proper construction. But, on the other hand, the statute is, if the husband or wife voluntarily abandon the other, and commit adultery, then dower may be barred. There was no offer here to show that the wife voluntarily abandoned the husband and committed adultery. Indeed, it may well be doubted whether such proof could be made while the decree of divorce remained in full force, as the decree was a conclusive determination of the question between the parties. Section 15 of the statute is a wholesome provision of our law, when properly construed. Its

object, no doubt, was to impose a penalty—the forfeiture of dower—when the husband voluntarily abandoned the wife, or the wife voluntarily abandoned the husband, and went off with an adulterer.

This case, if it amounts to anything, rather negatives the views of the majority regarding public policy. Here a divorced wife, who was entitled to dower under a given statute, was allowed to recover the same although after the divorce she committed adultery, and this in the face of a statute saying that if the wife commit adultery or voluntarily leave the husband she shall be forever barred of dower. The action was not against a stranger, but against one who was the successor of the husband or in privity with him. *Orth v. Orth,* 69 Mich. 158 (37 N. W. 67), was an action between the parties to an original divorce proceeding to set aside the decree for fraud, and was not against strangers. It has no possible bearing upon any question in this case.

*Moor v. Moor* (Tex. Civ. App.) 63 S. W. 347, was also an action between the original parties to the divorce proceeding, and the rights of third parties were in no manner involved. The only third persons to that proceeding were attorneys to whom the divorced husband had assigned some of his rights, and they filed a disclaimer of an interest in the property involved. I can not see how it is in any manner applicable to the case now before us.

*Ellis v. Ellis,* 55 Minn. 401 (56 N. W. 1056, 23 L. R. A. 287, 43 Am. St. Rep. 514), was an action between the administrator of the estate of a deceased divorced husband, and the divorced wife—the administrator standing, of course, in the shoes of the deceased; and all held in that case is that where in an action for divorce in the court of another state both parties voluntarily appear and submit to the jurisdiction, they were bound by the judgment, and could not avoid it in a collateral proceeding. It was further held that the fact that the wife brought the

divorce suit through ill treatment and threats by the husband could not be shown to defeat the judgment. The question as to a stranger's right to rely upon a decree of divorce was not considered or decided.

So much for the cases cited to sustain the conclusion that one who is sued for alienation of affections may set up a decree of divorce as a defense and that the plaintiff in the alienation suit is conclusively bound by the divorce decree. Not one of the cases cited on the proposition so holds. In none of them was the action against strangers and nothing is said in any about the right of a third party who is not in privity with either of the parties to the divorce decree to rely thereon. In fact the cases are all the other way. See Freeman on Judgments, sections 159, 313, and cases cited, among which are *Burlen v. Shannon,* 3 Gray (Mass.) 387; *Needham v. Brenner,* 14 Week. Rep. 694; *Gill v. Reed,* 5 R. I. 343, 73 Am. Dec. 73.

In the latter case, which was an action by a stranger for necessaries furnished a wife during her separation from her husband, it was held that a decree dismissing a husband's bill for divorce, based on the ground of the alleged adultery of the wife, is not evidence against the husband that the wife did not commit adultery prior to the petition for divorce, or during its pendency. The court said that in so far as the divorce suit was concerned the decree was *res adjudicata,* but that in so far as the plaintiff in the action then being considered was concerned, the decree in the divorce suit was not binding, and that the plaintiff in the suit for necessaries could not avail himself of it for the purpose of holding the husband liable for necessaries.

*Huntington v. Jewett,* 25 Iowa, 249, announces practically the same rule, basing it upon want of mutuality. I refer to this point because of the intimations in the majority opinion that plaintiff could in no manner question the divorce decree which his wife obtained against him.

That he may do so when a stranger is pleading and relying upon the divorce decree I have no doubt.    So much as to the effect of the decree in the divorce case independent of the statute under consideration.

In view of the use made by the majority of the case of *Gleason v. Knapp,* 56 Mich. 291 (22 N. W. 865, 56 Am. Rep. 388), it may be well to quote from a more recent case by the same court, reported in 131 Mich., at page 228 (101 N. W., at page 541).    In the latter case it is said:

Did the court err in allowing evidence tending to show the truth of the allegations contained in the second count of the declaration?    Counsel says plaintiff failed to set up this charge in his amended answer in the divorce case, and is now debarred from charging the defendant with said offense.    It is true, the defendant in that case did not say in so many words that his wife and Mr. Knickerbocker had committed adultery, but he, in effect, so charged them. This court so regarded the allegations of his answer, and passed upon that question in disposing of the case.    Counsel also says that because the court passed upon that phase of the case and found the charge of adultery was not made out in the divorce case, the decree in that case is conclusive upon that question; citing as to both of these claims *Gleason v. Knapp,* 56 Mich. 291 (22 N. W. 865, 56 Am. Rep. 388).    There is language in the opinion in that case which tends to justify the claim of counsel, but when the case is considered carefully it will be found to be distinguishable from this one.    In the case of. Gleason's wife against him no answer was put in.    In the case of Gleason against his wife nothing was done by him except to file his bill of complaint.    In the case brought by him against Knapp the court found the facts sworn to by him were entirely contradictory to his sworn bill against his wife.    The question involved in the case of *Knickerbocker v. Knickerbocker* was whether the wife was entitled to a divorce upon the ground of cruelty.    We held that she, was.    The question involved here is whether the affections of Mrs. Knickerbocker were alienated by the unlawful acts of the defend-

ant.   We think the case comes within *Corry v. Lackey,* 105 Mich. 363 (63 N. W. 418).

This in itself practically disposes of that case.  But it should be noticed that *Gleason's* case was not disposed of on the ground of public policy, but upon some theory of estoppel.   We quote the following from that case:

Plaintiff's testimony in the case now before us is quite positive that what he saw that night did not lead him to complain of his wife's adultery, or prevent his desire to have their domestic relations continued, and did not prevent subsequent cohabitation.   The wife's divorce proceedings, which began in January, 1881, being followed by a decree which established that she had a sufficient cause of grievance, must be regarded as a bar to any cause of action for that grievance, if it existed.   If plaintiff had such a cause of action as he now asserts, it would not only have been admissible in evidence in that divorce suit, but it would have been an absolute and perfect defense to it.  The suggestion of the circuit judge that the jury might, as they saw fit, infer that that very divorce suit was the outcome of defendant's misconduct, can not be allowed any force, since defendant's failure to defend on that ground, when that defense was opened to him, and, according to his claim now, was known to him, left it as completely cut off as any other; and the decree is legally conclusive against him that no such facts exist.

Now it will be noted that the husband's conduct, upon which the divorce was granted, occurred before any of the grievances of which he complained in the aliènation case. Moreover, the case was one of criminal conversation and it was entirely proper, if it was not the husband's duty, to set up his wife's adultery in that action as a complete defense if not as ground for divorce from his wife.   The attempt made by the majority to distinguish between alienation and criminal conversation cases, while not to my mind persuasive, may well be used in this connection as a complete overthrow, if any be needed, of the doctrine first

announced by the Michigan court. Criminal conversation, or adultery, is both a cause for divorce and a complete defense to an action for divorce. Alienation of affections is neither. Plaintiff in the instant case, could not, if he would, have pleaded loss of his wife's affections through defendant's conduct. That being true the Michigan case, even if it had not been substantially overruled by the court which announced it, would not be an authority because of the very distinction made by the majority between alienation and criminal conversation cases, as pointed out in the majority opinion. I must confess that I do not understand the logic of the distinction made, if there be one, between alienation and criminal conversation cases as applied to the question now before us. There never was a time when plaintiff could have pleaded alienation of his wife's affections in defense to her action for divorce. As bearing upon the doctrine of estoppel the distinction is pertinent and with this in mind the *Gleason* case loses all its force, if it ever had any, save for the purpose of that litigation. It entirely disposes of any theory of estoppel. The *Gleason* case does not in any manner support the position of the majority. Every case which I can find, after a somewhat diligent search, announces a contrary doctrine. There is nothing contrary to public policy in allowing plaintiff to proceed with his action against the defendant, notwithstanding defendant's attempt to take advantage of a situation which he, by his own wrong, contributed to, if he did not bring about; and clearly there is no estoppel in the case.

IV. While the majority now rely very little, if at all, upon the doctrine of public policy, yet I think it clear from the discussion that even without a statute such as section 3181 they would hold plaintiff's right of action barred by reason of the divorce obtained by his wife. To this I can not agree. The rule, if established, must be applied to every cause, no matter how flagrant the conduct of

the defendant. The faults and foibles of human nature must be taken into account by the courts if they are to measure up to the full measure of their responsibility. Suppose a defendant does invade a man's home and, with the consent of the wife, alienates her affections from her husband, would not such conduct be likely to bring about strained relations between husband and wife? And is it not altogether likely that the husband's treatment of his wife will lack that degree of love and affection to which she might otherwise be entitled? Would it not, in all human probability, lead both to seek a separation and a dissolution of the marriage ties? Would it not lead, if you please, to what has been denominated cruel and inhuman treatment—to profanity and neglect—aye, even to something more forcible? And if such be the case, does it lie in the mouth of a defendant, who by his own prior wrong brought about the wrecking of the home, to plead and prove in defense that the wife, after the cause of action was complete, obtained a divorce from her husband? It must be remembered in this connection that alienation of affections is not a ground for divorce; so that the husband of a wife, who has, through the machinations of another, lost all affection for her husband, must tamely submit, for he can not obtain a divorce. Even if he could, as I understand the majority opinion, his doing so would destroy his right of action against the assassin of his home. Moreover, when sued by his wife for conduct which she might reasonably apprehend would be the result of her unfaithfulness, he can not plead alienation of her affections as a defense, and could not, in a divorce suit, have her conduct in this respect, unless it amounts to what the law calls criminal conversation investigated. It must be remembered that it is the original wrongdoer who is interposing the defense of subsequent divorce obtained by the wife. If such a defense can be interposed the result may easily be apprehended. The pliant wife

will ·be induced to do any and everything to secure a di-
vorce from her husband, not only that she may marry
the original wrongdoer, but also to shield her confederate
from an action against him for the damages caused by his
despicable, illegal, and unlawful conduct.   If this be public
policy, then I have an entirely erroneous notion of what
the term means.   The decisions are all to the contrary.
One of these was announced by this court more than
thirty-three years ago, and it has stood unchallenged either
by the Legislature or by .the court to this day.   The case
is *Wood v. Mathews,* 47 Iowa, 409.   After so long a
time we may well believe that the Legislature, which
declares the public policy of the state, has concluded, that
for this jurisdiction at least, there is nothing in such
a situation as is here presented which offends against
public policy.   Of the many cases from other jurisdic-
tions holding that under such circumstances the action
is neither abated nor barred are the following: *Pretty-
man v. Williamson,* 1 Pennewill (Del.) 224 (39 Atl.
731); *Wales v. Miner,* 89 Ind. 121; *Michael v. Dunkle,*
84 Ind. 544 (43 Am. Rep. 100); *Postlewaite v. Postle-
waite,* 1 Ind. App. 473 (28 N. E. 99); *Haynes v. Nowlin,*
129 Ind. 581 (29 N. E. 389, 14 L. R. A. 787, 28 Am.
St. Rep. 213); *Clow v. Chapman,* 125 Mo. 101 (28 S.
W. 328, 26 L. R. A. 412, 46 Am. St. Rep. 468); *Beach
v. Brown,* 20 Wash. 266 (55 Pac. 46, 43 L. R. A. 114,
72 Am. St. Rep. 98); *Purdy v. Robinson,* 133 App. Div.
155 (117 N. Y. Supp. 295); *Keen v. Keen,* 49 Or. 362
(90 Pac. 147, 10 L. R. A. (N. S.) 504).   The following
quotations from some of these cases is apropos.

In *Wales'* case the court said:   "The fact that a di-
vorce may have been granted to the plaintiff a few days
before the bringing of the suit would not destroy appel-
lee's right of action.   That might be the means of per-
fecting it.   .   .   .   The action is brought for the injury

and destruction of the plaintiff's marital relations and is
not based upon their then existence."

In *Michael's* case, which was exactly like this, the
opinion on this point reads as follows: "We think other-
wise. . . . It would not be in the interests of good
order and the public morals to permit the seducer of a
wife to set up a disagreement, or even a separation, be-
tween her and her husband, as a complete defense to an
action by the latter for the wrong."

In *Prettyman's* case the court said: "The divorce
granted by the Legislature to Mrs. Prettyman May· 26,
1897, may be and should be considered by you in miti-
gation of damages, if you should think the plaintiff en-
titled to recover damages, because the plaintiff would not
be entitled to any compensation for the loss of the affec-
tion, society, and services of his wife after ·she ceased
to be his wife. Although it is true, as Mr. Bishop has
said in his valuable work on Marriage and Divorce (vol-
ume 1, section 1465), 'That a legislative divorce, equally
with a judicial one, snaps the vinculum of the marriage,
and that whatever hangs upon it falls,' yet the learned
author in laying down that proposition illustrates its
meaning by referring to the next section, which is as fol-
lows: 'If the man dies, the woman will not be his widow,
entitled to dower, and a portion of his personal property.
He will not, on her death, be authorized to hold her lands
as tenant by curtesy; but, on the contrary, his in-
terest and that of his grantees and representatives, in them
and in her choses of action, ceases. This is not a devest-
ing of vested rights.' The learned writer did not mean,
and it can not be the law, that the divorce would be a bar
to an action like the present, brought for an injury to the
marital relation prior to the divorce, and which action is
not based upon the existence of such relation at the time
of the commencement of the suit."

In *Wood v. Mathews*, this court, speaking through

Day, Ch. J., said: "The evidence shows that after the injuries complained of, and before this action was brought, the plaintiff's wife procured a divorce from him. The court instructed that this constitutes no defense to an action for damages against the defendant for any injuries which he may have sustained prior to the time of procuring the divorce. Appellant complains of the giving of this instruction. In it there is no error. Actions of this kind, after a decree of divorce, were maintained in *Dickerman v. Graves,* 6 Cush. (Mass.) 308 (53 Am. Dec. 41), and in *Ratcliff v. Wales,* 1 Hill (N. Y.) 63." As further sustaining these views, see *Smith v. Smith,* 98 Tenn. 101 (38 S. W. 439, 60 Am. St. Rep. 838); *Modisett v. McPike,* 74 Mo. 636; *Knickerbocker v. Worthing,* 138 Mich. 224 (101 N. W. 540). In other cases it is held that the death of the wife constitutes no defense. *Yundt v. Hartrunft,* 41 Ill. 9. And voluntary separation is no defense. *Browning v. Jones,* 52 Ill. App. 597; *Cross v. Grant,* 62 N. H. 675 (13 Am. St. Rep. 607); *Jenkin v. Chism* (Ky.) 76 S. W. 405; *Schorn v. Berry,* 63 Hun, 110 (17 N. Y. Supp. 572).

IV. Coming now to the statute on which the majority rely, it reads: "When a divorce is decreed, the guilty party forfeits all rights acquired by the marriage." Before discussing the question as to the construction of this statute it is proper to say that *Wood v. Mathews,* 47 Iowa, 409, was decided long after this statute went into effect. That case either construes the statute, or the court did not think it applicable to the case, and in either event the majority are under the necessity of getting away from that precedent. That we should not now, after a lapse of thirty-three years, change the rule is to my mind imperative. The Legislature, we must assume, has been entirely familiar with that decision ever since it was rendered, and it has not seen fit to change the rule by statutory enactment. We should not do so in my opinion. The case has been

cited by other courts with approval and has never been criticised anywhere. If there were no other reason, I should plant the decision of this case upon the ground of *stare decisis*. But it is perfectly apparent to my mind, that the statute does not and was not intended to cover such a case as this. The rights referred to in this statute are, it seems to me, rights of the parties to the divorce and their privies, and not rights of action against strangers. It will be noticed that the statute uses the term "guilty party," and by necessary construction the rights referred to are rights against the other party or his privies, and not against entire strangers. Moreover, it is rights acquired by the marriage, and not rights of action against third persons which grow out of the violation by a stranger of his duties toward the husband of a then married woman— rights which became vested before the action for divorce was commenced. The right which plaintiff had was not acquired by the marriage. Defendant's breach of duty toward the plaintiff in alienating his wife's affections was plaintiff's cause of action, and it was not acquired by the marriage. It grew out of the status, but was not acquired by it. A relation was assumed, but, like other relations, the right of action was not acquired thereby. The relation simply fixed the measure of duty, but one acquired nothing thereby unless there was a breach of that duty, and the right of action became vested as soon as the duty was violated. Plaintiff's right of action was vested long before any action for divorce was brought, and the quotations from the Delaware and Indiana cases hitherto cited are quite in point here. The rights referred to in the statute are not vested rights, but rights between the parties themselves, acquired by the marriage, and not vested rights against strangers. I do not see how this could be plainer. Doubtless there is the reason why neither counsel nor court thought it necessary to notice the matter in the *Wood* case. There is a manifest distinction between rights and

rights of action.   A right is a power, prerogative, or privilege.   A right of action is a right to commence and maintain an action, existing at the time of the commencement of plaintiff's suit.   It is not necessary that the marriage relation exist at the time suit is brought or when the case goes to trial; and plaintiff had a right of action which was vested in him when the divorce suit was commenced.   In several cases which were decided while this statute was in force it was suggested that a wife guilty of adultery or other thing entitling her husband to a divorce, might still, under exceptional cases, have alimony.   *Dupont v. Dupont,* 10 Iowa, 112; *Fivecoat v. Fivecoat,* 32 Iowa, 198; *Barnes v. Barnes,* 59 Iowa, 456; *Coulthard v. Coulthard,* 91 Iowa, 742.   In view of what is said in *McCraney v. McCraney,* 5 Iowa, 232, the intimations in these opinions seem to be doubtful to say the least; but the latter cases undoubtedly afford the proper clue to determine the reason for the enactment of the statute.   Without such a statute many courts hold that a guilty wife may be entitled to alimony and that divorce is not a bar to dower, especially to the innocent party.   This statute was enacted to furnish a rule for this state.   See the *McCraney* case, *supra,* and *Winch v. Bolton,* 94 Iowa, 573.   Without such a statute there is no uniform rule in the several states regarding dower, and as to alimony the cases are in great confusion.   The statute in question first appeared in the so-called Code of 1843 (see chapter 65, section 6, Blue Book of 1843), and is also found in the Code of 1851 as section 1486.   It was enacted at a time when there was great confusion in the cases regarding allowances of alimony to a guilty party in a divorce suit, and when even the question of dower to a divorcee was in grave doubt.   These rights, and many others, were acquired by the marriage and existed between the parties or their successors in interest and were undoubtedly the only ones contemplated by the Legislature.

As illustrative of the confusion which existed at that time, see the able opinion of Dillon, J., in *Smith v. Woodworth,* 4 Dill. 584, Fed. Cas. No. 13,130. Also *Levins v. Sleator,* 2 G. Greene, 604; *Lakin v. Lakin,* 2 Allen (Mass.) 45; *Bryan v. Batcheller,* 6 R. I. 543 (78 Am. Dec. 454); *O'Ferrall v. Simplot,* 4 Iowa, 381.

That the Legislature had in mind rights acquired by the marriage between the parties thereto and their privies or successors there is, to my mind, no doubt. This statute was dropped from the Revision of 1860; but it reappeared again in the Code of 1873 (section 2230). When readopted it should be given the same force and effect, and the same construction as when it originally appeared in 1843 and 1851. The mischiefs aimed at and the reasons for its adoption will be presumed to be the same as when it first appeared. It will be observed by the careful searcher of our authorities that there was no change whatever in the decisions of the court during the *interim* in which the statute was not in force. I am impressed with the thought that the majority are making this statute serve a purpose which was never intended by the Legislature, and it surely was not intended thereby to cut off a right of action by a husband against a wrongdoer which arose in virtue of the marriage relation, but which was not acquired by the marriage. The attempt by the majority to distinguish the *Wood* case by making it apply to criminal conversation cases, but not to actions for alienation of affections, is not persuasive. I have already referred to this in another connection, and need only say at this point that if the right to sue for pollution of the marriage bed is not acquired by the marriage, certainly a right of action for alienation of affections is not acquired thereby. It is enough for my purpose to point out the exact situation, and thus leave the matter in the hope that the Legislature will immediately change this statute so that it will not in the future be made to do such

unholy service. Here plaintiff's right of action was complete long before his wife was given a divorce. He could not have pleaded alienation of his wife's affection as a defense to that action, and he was not required to show when he brought his action for alienation that the marriage relation then existed or that at the time of the bringing thereof he was living in harmonious relations with his wife. All that he need show was that at the time defendant committed the wrong he was then wedded to his wife. More he was not required to do. Defendant then came in with what the majority must hold is either a plea of confession and avoidance or a plea in bar in which he admits his wrong, that he had no justification therefor, but that since the commission of that wrong plaintiff's wife obtained a divorce from him and plaintiff thereby forfeited his right of action against the wrongdoer. In other words, a guilty party is permitted to take advantage of and plead a divorce which he himself was undoubtedly instrumental in securing in defense of his own confessed iniquity. In order to complete the infamy he then marries the divorced wife. According to the majority public policy demands that the wronged husband pocket his grief and submit to the iniquity without a murmur. I can not in justice to my own feelings agree to this version of public policy without protest. This dissent is lodged against the proposition that the divorce is an absolute and complete defense to plaintiff's cause of action. That it should be considered in mitigation of damages I have no doubt, but even here the circumstances under which it was obtained should be considered. It is evidence of plaintiff's misconduct, but it will be noticed that it was misconduct after plaintiff's cause of action arose. As bearing upon the simple question of public policy, I do not understand why a decree of divorce should be given any more force than plaintiff's misconduct established

in any other way. For illustration, a divorce decree on the ground of adultery or for any other cause, under the most favorable aspect to the defendant, should not be regarded as anything more than conclusive proof of the truth of the grounds alleged for the divorce. Now, so far as public policy is concerned, it is entirely immaterial whether plaintiff's misconduct after his right of action arose is established by a decree affording conclusive proof, or by uncontradicted testimony to the same matter. Would the majority say that a husband who has a right of action for alienation of his wife's affections is barred of his right to sue or enforce his claim because after his cause of action arose he treated his wife cruelly and inhumanly or even committed adultery? If public policy is to control then, the majority, to be consistent, must so affirm. That this is not the rule is established by an unbroken line of cases. See Bishop's Marriage & Divorce, sections 1371, 1372, 1373; *Norton v. Warren,* 9 Conn. 172; *Shattuck v. Hammond,* 46 Vt. 466 (14 Am. Rep. 631); *Hadley v. Heywood,* 121 Mass. 236. Also, *Izard v. Izard,* 14 P. D. 45.

The decree of divorce was, until set aside, binding upon the parties and upon the state, but I hesitate to say that it may be taken advantage of by one who prior thereto invaded the home and did the very things which may have brought it about. Surely plaintiff at one time had a cause of action and he has it yet, unless the divorce obtained after his cause of action became perfect operated as a forfeiture of that cause of action. Say what we may, the truth is that the divorce according to the majority opinion operated as a forfeiture; and that forfeiture is pleaded and relied upon by the wrongdoer himself in setting up a decree to which he was not a party, and in which he is interested only for the purpose of purging his own wrong.

For the reasons stated, I must register this emphatic dissent from the conclusions of the majority.

LADD, J., dissents.