**296 P.2d 278**

**Earl W. SADLEIR, Plaintiff and Respondent,**

v.

**Melvin G. KNAPTON, Defendant and Appellant.**

No. 8374.

Supreme Court of Utah.

April 16, 1956.

Gustin, Richards & Mattsson, Salt Lake City, for appellant.

Woodrow D. White, Salt Lake City, for respondent.

WADE, Justice.

Defendant, Melvin G. Knapton, appeals from a judgment on a jury verdict awarding $8,000 general and $2,000 punitive damages to plaintiff Earl W. Sadleir for alienation of his wife's affections.

Plaintiff and defendant knew each other in high school, they joined the Navy as Radar Cadets at the same time and spent their time in the service in the same units, had the same leave periods, were discharged and returned home at the same time and place, and were fast friends thereafter. Plaintiff married Vera Smith, on June 19, 1947, some time after his discharge from the service. Two daughters from that marriage are now living; one was five and the other three years old at the time of this trial. Plaintiff took employment as a mail clerk. After the marriage, defendant was a frequent visitor in their home. From the beginning of 1952 until plaintiff's wife left him on January 8, 1954, plaintiff's employment kept him from home from the middle of the afternoon until almost 12:00 at night for five days each week. During this time defendant visited plaintiff's wife while he was absent nearly every evening and would leave shortly before plaintiff's return home.

In December of 1953, plaintiff's wife revealed to him that she was "moody" for defendant. On January 6, 1954, plaintiff arranged a meeting with defendant to discuss his relations with Mrs. Sadleir. They met about ten o'clock in the morning and had a discussion in plaintiff's car in front of the Kearns Building where defendant was employed. At that meeting defendant agreed to discontinue his visits with plaintiff's wife and to come to plaintiff's home and in the presence of both of them tell her that he did not love her and that he was going to discontinue his visits. Accordingly, on

January 8, 1954, defendant called at their home and met with plaintiff and his wife, but instead of telling her he did not love her and that he was going to discontinue his visits, he told her that he did love her and wanted to marry her and agreed to support her until she could obtain a divorce and pay for the divorce and then marry her when the divorce was final. Thereupon Mrs. Sadleir left plaintiff's home and discontinued living with him, taking the children with her, and immediately thereafter commenced divorce proceedings. Sadleir defaulted in the divorce action and on February 26, 1954, his wife was awarded a divorce and the custody of the children. Plaintiff commenced this action against the defendant for alienation of his former wife's affections on March 27, 1954, and defendant married plaintiff's former wife soon after the divorce became final.

Appellant contends that plaintiff forfeited his right to a judgment in this case under section 30–3–9, U.C.A.1953, which provides that "When a divorce is decreed the guilty party forfeits all rights acquired by marriage." This question is one of first impression in this court but Iowa has construed an identical statute [1] in accordance with appellant's contention.[2] On the other hand Missouri, in construing a statute which is similar to ours on all material points, has held that it deals only with the rights as between the parties to the marriage and does not operate to protect a guilty third party from the consequences of his own wrongful acts.[3]

Except that it fixes the marriage status of the parties thereto and the right of custody of the children, it is clear that the divorce decree is not res judicata of the issues in this case because the defendant was not a party to that action. Nor is plaintiff in any way estopped as against the defendant here by that decree.[4] Appellant does not so contend. He simply contends that plaintiff was adjudicated the "guilty party" in the divorce action and under the provisions of the above section 30–3–9, U.C.A.1953, he forfeited the rights he now claims against defendant because such rights were "acquired by marriage." He points out that the parties cannot by mutual consent dissolve a marriage,[5] that a

1. Section 598.16 Iowa Code 1950, I.C.A.

2. Hamilton v. McNeill, 1911, 150 Iowa 470, 129 N.W. 480, Ann.Cas.1912D, 604; Duff v. Henderson, 1921, 191 Iowa 819, 183 N.W. 475. In both of these cases there was a division of opinion in the court.

3. DeFord v. Johnson, 1913, 251 Mo. 244, 158 S.W. 29, 46 L.R.A.,N.S., 1083, Ann. Cas.1915A, 344; same cases on a subsequent appeal, Mo.1915, 177 S.W. 577; Pollard v. Ward, 1921, 289 Mo. 275, 233 S.W. 14, 20 A.L.R. 936. For the Missouri Statute see section 452.090 Missouri Revised Statutes 1949, V.A.M.S.

4. See annotation to Pollard v. Ward, supra, in 20 A.L.R. commencing at 943.

5. Hilton v. Roylance, 25 Utah 129, 69 P. 660, 58 L.R.A. 723, 95 Am.St.Rep. 821; Matter of Estate of Park, 25 Utah 161, 69 P. 671; Palmer v. Palmer, 26 Utah 31, 72 P. 3, 61 L.R.A. 641, 99 Am.St. Rep. 820.

court will not knowingly grant a divorce on collusion of the parties or perjured testimony, nor by default without evidence taken in the cause supporting the decree.[6] He contends that this shows a legislative intention, in order to prevent divorce by agreement, collusion or perjury, to deprive the party adjudicated "guilty" of all rights resulting from the marriage even as against third parties. This argument overlooks the fact that this section is a part of our divorce laws which deal exclusively with the rights of the parties to the marriage as between them and has nothing to do with the rights against third parties. The State is not interested in perpetuating a marriage after all possibility of accomplishing any desirable purpose of such relationship is gone, nor does sound policy require in such cases a bitter contest for divorce.

■ So we hold that the rights which plaintiff claims against defendant were not "rights acquired by marriage" under the meaning of those terms as they were used in our statute. Although the right against alienation of his wife's affections could not exist if there had been no marriage because there would be no wife's affections to alienate, still this is not of the class of marital rights acquired by the immediate parties thereto by reason of the marriage. It is a right arising out of that relationship as a protection against third parties who might wrongfully interfere with it. It is recognized by the law for the purpose of protecting the sanctity of the family by awarding compensation to those aggrieved by such wrongful conduct and as a warning to intermeddlers that married women are out of bounds and thereby protect the marriage relationship. We therefore hold that this right which plaintiff seeks to enforce against defendant in this action is not the kind of right which the statute in question intended should be forfeited by the person adjudicated to be the guilty party in a divorce action.

Appellant raises a number of other points which after careful consideration we conclude clearly do not require a reversal of this case. This is especially true in view of our decision on the above point and what we said in the case of Wilson v. Oldroyd.[7]

Affirmed. Respondent to recover his costs of this appeal.

McDONOUGH, C. J., concurs.

CROCKETT, Justice (concurring).

I concur, but in addition to the reasons stated in Justice WADE'S opinion, desire to add the following:

The right of a husband to bring an action for alienation of affections of his wife is a fundamental common-law right, which is uniformly recognized by authorities and

6. Section 30-3-4, U.C.A.1953.

7. Wilson v. Oldroyd, 1 Utah 2d 362, 267 P.2d 759.

text writers,[1] except that in some states it has been abolished by statute.[2] Our legislature has not seen fit to make any enactment in that regard.

To give the statute referred to the effect contended for by defendant would bring about anomalous results inconsistent with the purpose which gave rise to the right of action for alienation of affections. For instance, if the illicit suitor, wooing a married woman, did not fully succeed in destroying the marriage to the extent a divorce was procured, a cause of action for alienation of affections would exist against him, whereas, if he succeeded in completely destroying the marriage, then the cause of action would be obliterated by the application of this statute. This would have the effect of rewarding the greater wrongdoer for success in his nefarious efforts, and penalize one not quite so successful.

Another consideration is that if the illicit suitor should suffer remorse of conscience in the course of his wooing, he could see a danger in repenting and desisting because he would be vulnerable to suit for alienation of affections, whereas if he continued and succeeded in destroying the marriage by getting a divorce granted he would be protected from such suit. This would tend to discourage one from rectifying his conduct and encourage him to continue with his improper designs.

Furthermore, such an application of the statute would pose a dilemma to the aggrieved husband. If the suitor did not succeed in stealing the wife's affections to the point of the divorce, then the latter could defend on the ground that the husband had not in fact lost his wife's affections because he still had his wife. It would be very unusual, if not inconceivable, that a husband would sue for alienation of affections while still married to his wife. On the other hand, if the divorce was in fact granted, the suitor could defend on the ground that the right "acquired by marriage," to sue for alienation of affections had been nullified by reason of the statute.

For the foregoing reasons it is clear that it would be incongruous and inconsistent with the purpose for which the right was first recognized, and continues to exist, to accept the interpretation appellant contends for of the statute in question. It seems to me unquestionable that it is to be considered in context with the other statutes in the

1. See, e. g., Wilder v. Reno, D.C., 39 F. Supp. 404, citing Blackstone but recognizing validity of Pennsylvania statute abolishing cause of action; and Gernerd v. Gernerd, 185 Pa. 233, 39 A. 844, 40 L.R.A. 549, stating that right had not been doubted since the 1745 case of Winsmore v. Greenbank, Willes, 577 (C.P.Eng.). The authorities are also in accord on this point: 27 Am.Jur. 120, Husband and Wife, Sec. 519; 42 C.J.S., Husband and Wife, § 660, p. 315; Rodgers, Domestic Relations, Sec. 176; Peck, Domestic Relations, 3d Ed., Sec. 45.

2. See 42 C.J.S., Husband and Wife, § 660, p. 315, note 42 and supplement.

title on Husband and Wife and that it relates solely to their rights inter se.

HENRIOD, Justice (dissenting).

I dissent, preferring to follow the rule and reasoning in the Hamilton (Iowa) case. Reading it and comparing it with the De-Ford (Missouri) case, impresses me with the superiority of its logic and reason.

Many Utah Statutes were lifted from those of Iowa. The parent of 30–3–9, U.C. A., around which this case revolves, apparently was taken from Iowa, having been enacted in 1852, Iowa's in 1851. The statutes are identical. The statute of Missouri is not, but is similar. Under the circumstances we should give great weight to the judicial interpretation of the Iowa statute by the Iowa courts, which, in the Hamilton case, placed an opposite interpretation on its identical statute than is placed on our statute by the main opinion. We should follow the Iowa decision for the reason stated above and for reasons following.

The main opinion arbitrarily excludes the right to sue for alienation of a wife's affections from the rights "acquired by marriage," saying the quoted phrase means only rights between the spouses. There is absolutely no statutory basis for such a connotation. If a husband did not get the right to sue for alienation of his wife's affections from the marriage, where did he get it? He had no such right during courtship, nor does he have such right after divorce. He has no such right where his

mistress is lured away by Justice CROCKETT'S illicit suitor. There can be no logical or other escape from the fact that where there is no marriage there is no right to sue, so that it follows that a husband *has* to acquire his right to sue for alienation of his wife's affections specifically, distinctly and directly from the consummation of a marriage. To say otherwise is to ignore fact and resort to fiction, putting words in the legislature's mouth that it did not utter.

If the legislature, as far back as 1852, or at any time thereafter, had intended to say what this court now says it said, it simply could have added three little words to its enactment, italicized as follows:

"When a divorce is decreed the guilty party forfeits all rights *against the other* acquired by marriage."

Who are we to read into the statute those italicized words left out by the legislature?

Why is it so wrong to deny a husband access to the court in an alienation case when a divorce court already has made a finding of fact that he was guilty of conduct that already had alienated his wife's affections? And particularly why is it so wrong when, as here, the husband, has been found guilty of bamboozling and perpetrating a fraud upon the court, concealing facts and then conveniently producing what he contends are true, but unfound facts. To allow such a person now to sue for his wife's alienated affections, after being a party to such fraud, and to have this court actually put

the stamp of approval on such effrontery, trickery and bamboozling, to this writer approaches an admission on our part that there is a weak link in our judicial system. The legislature no doubt worded its enactment to prevent just such miscarriage of justice and to make it easy for courts such as ours to shut the door in this litigant's face.

The series of anomalies which Justice CROCKETT fears if we do not construe the statute as done in the main opinion will not stand the test of logical analysis. In substance he says (1) that if the alienator fails to destroy the marriage the action may lie, but it will not if he woos beyond the divorce stage; (2) that if a remorseful seducer wishes to do penance, nonetheless, he would be tempted to woo beyond the divorce stage in order to gain statutory immunity against suit; and (3) that a husband would find himself on the horns of a dilemma who could not or would not sue if his wife's affections were only half alienated, giving the illicit suitor a defense in such case, while, on the other hand, if he could survive the divorce stage, he would have statutory immunity. Mr. Justice CROCKETT would be correct in each of his three anomalies if he could and would but add one important fact: That the husband had been found guilty himself of alienating his wife's affections by being the guilty party in a divorce action.

So fraught with chance for fraud, and so distasteful as to type of litigation are suits to recover money for the alienation of a wife's affections, that fourteen states have taken steps,[1] to outlaw such litigation, including the state to the east and the one to the west of us. In spite of the tendency to relegate this type of litigation to oblivion, the main opinion here not only condones, it, but condones it where the plaintiff admittedly has been a party to a deliberate fraud upon a divorce court, whose findings and decrees we should not permit to be nullified by any weak excuse that someone deliberately concealed the truth,—all at a time when we could eliminate at least one type of alienation of affection litigation by interpreting a clear, unambiguous statute according to its plain and ordinary meaning.

WORTHEN, Justice (concurring in Mr. Justice HENRIOD'S dissenting opinion).

It is impossible to understand what the legislature meant by the language of Section 30-3-9 unless it intended it to mean what the Iowa court concluded a similar statute of that state to mean.

Nor can I concede the grave consequences suggested by the opinions of Justices WADE and CROCKETT. If we construe the section as contended for by appellant, we will have served notice on these lukewarm husbands who permit, if not en-

---

1. Alabama, Colorado, California, Florida, Illinois, Indiana, Louisiana, Michigan, Maryland, New Jersey, New York, Nevada, Pennsylvania and Wyoming.

courage, the obtaining of a divorce on any ground and with any testimony selected.

In this case, if respondent had a good defense to his wife's divorce action, he should not have colluded with her to induce the court to grant a decree. If all the facts set out in his complaint for alienation of affection were true, he had ample to support a complaint for divorce against his wife. To avoid the identical conditions here presented is full warrant for the enactment of the section in question. In my opinion it is fraudulent for respondent to permit his wife to take a default divorce, uncontested, on allegations such as were made in her complaint, and permit the court to enter a decree based on findings that the allegations of the complaint were true, and then to file a suit for alienation of affection, predicated on the claimed loss of his wife's affection through the wrongful acts of appellant, when his wife's complaint for divorce alleged that his conduct has caused her to lose all respect for her husband and had made it impossible for her to live with him as husband and wife.

The positive statement in the wife's complaint against respondent that respondent's conduct had caused her to lose all respect for him is not consistent with the allegations of respondent's complaint in this action that defendant alienated his wife's affection.

If respondent in this case had contested his wife's divorce action with the same vigor and with the apparent desire to keep

or regain her love and affection that he used in his pursuit of appellant's cash, respondent would probably not have been the guilty party in the divorce action and would have been free to sue the intruder.