**Jody ROTHE, Plaintiff and Respondent,**

v.

**Dale Kurt ROTHE, Defendant and Appellant.**

**No. 880018–CA.**

Court of Appeals of Utah.

Feb. 13, 1990.

Wayne B. Watson, Provo, for defendant and appellant.

Richard B. Johnson and Michael K. Black, Orem, for plaintiff and respondent.

Before BENCH, BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

Defendant Dale Kurt Rothe appeals the trial court's order on cross petitions for modification of the parties' divorce decree. Defendant contends that the court erred in determining that a written loan agreement between defendant and his father did not constitute a mortgage and in refusing to find that plaintiff Jody Rothe was obligated under the decree to pay and discharge the debt to defendant's father. We affirm.

In October 1974, prior to the parties' marriage, defendant purchased a home and real property in Lehi, Utah. To finance the purchase, defendant assumed an existing Veteran's Administration (V.A.) mortgage of $6,818.59 and entered into a handwritten agreement with his father, Fon K. Rothe, in which his father agreed to loan him an additional $31,484.04 for the purchase of the home. The agreement states: "Dale Rothe agrees to pay $150.00 a month on the house loan of $38,302.63 minus the Veterans Administration loan of $6,818.59 plus the interest I will have to pay to the Bank of America." The agreement was never recorded.

In July 1975, the parties married. During their marriage, both parties acquired money orders at various times to pay the V.A. obligation. Apparently, defendant, and not plaintiff, paid the $150 per month to defendant's father. In September 1979, the V.A. issued a release of mortgage after its loan was paid in full.

In October 1980, the parties divorced. The divorce decree awarded plaintiff possession of the home and ordered her to "assume and be responsible for the mortgage due and owing upon the home of the parties." In August 1981, defendant quitclaimed his interest in the home and real property to plaintiff.

For approximately thirty months after the divorce, defendant deducted $150 from his alimony payments of $220 per month to plaintiff, which he allegedly used to pay the "mortgage" obligation. Plaintiff did not object to this arrangement. The parties dispute whether plaintiff understood that the $150 was paid to defendant's father or to the V.A. Plaintiff never received any receipts or accounting from defendant to indicate that mortgage payments were paid or to whom they were paid. After plaintiff discovered there was no recorded mortgage on the property, she discontinued allowing defendant to deduct the $150 per month from his monthly alimony payments to her, on the advice of her counsel.

In August 1986, defendant filed a petition to modify the divorce decree. In part, he requested the court to order plaintiff to satisfy the debt to his father for the purchase of the home. Defendant claimed the debt was a mortgage in equity and that the divorce decree required plaintiff to satisfy the debt. Plaintiff filed a reply and counter petition to modify the divorce decree.

On December 17, 1987, after a hearing, the court amended the divorce decree in pertinent part as follows:

1. That the agreement of October, 1974, was not a mortgage in that it does not describe land to which it would apply, or does it contain any provisions relative to rights, obligations and procedures for foreclosing the same and was not recorded.

2. That the Decree of Divorce's mention of "mortgage" without any other reference to the specific obligation claimed to be a mortgage in favor of a third party, and not of record, would be insufficient to establish liability to Plaintiff to pay and discharge that debt.

On appeal, defendant concedes that the note between him and his father fails to qualify as a legal mortgage under Utah Code Ann. § 57–1–14 (1986). However, defendant claims the trial court erred in (1) failing to reform the divorce decree to reflect the intention of the parties; (2) refusing to hold plaintiff liable on the debt owing to defendant's father; and (3) finding that the debt to defendant's father did not constitute an equitable mortgage.

## STANDARD OF REVIEW

In an appeal of a domestic case, we assume that the trial court's findings of fact

are correct, and reverse only if they are clearly erroneous. *Elmer v. Elmer*, 776 P.2d 599, 602 (Utah 1989); Utah R.Civ.P. 52(a). *See Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989) (the same standard of review applies "whether case is characterized as one in equity or one in law").

## REFORMATION OF DIVORCE DECREE

█ We first address defendant's claim that the trial court erred in failing to reform the divorce decree on the basis of mistake of fact. Defendant asserts that the term "mortgage" in the divorce decree resulted from a diction error and the parties' misunderstanding of the legal status of defendant's debt to his father. Defendant urges the court to reform the divorce decree to reflect the parties' intention that plaintiff pay the debt owed defendant's father.

"Reformation of an instrument for mutual mistake of fact is an equitable remedy that has long been recognized." *Guardian State Bank v. Stangl*, 778 P.2d 1, 4–5 (Utah 1989). The Utah Supreme Court has also clarified that unilateral mistake in the formalization of a writing may also provide an appropriate basis for reformation. *Id.* at 6. In essence,

> the law really only enforces the intent of the parties as to the fundamental agreement between them; a mistake in the recordation or memorialization of an agreement or document may not be exploited by one party to take advantage of

the other. Principles of common honesty are not foreign to law and equity. *Id.*

Defendant argues that the evidence clearly preponderates against the court's findings that plaintiff was unaware when the V.A. mortgage against the home was released and that plaintiff did not intend to pay defendant's debt to his father. Defendant relies on the following evidence to support his claim: (1) plaintiff was aware of the agreement between defendant and his father; (2) plaintiff testified at trial that she thought the note was a mortgage;[1] (3) by virtue of Utah Code Ann. § 57-3-2 (1986),[2] plaintiff had constructive notice at the time of the divorce decree of all recorded encumbrances against the property; and (4) plaintiff authorized defendant to deduct from his alimony payments to pay his father in partial satisfaction of the debt. Defendant concludes that plaintiff's authorized alimony deductions, coupled with her knowledge that the only obligation owing on the house was the note between defendant and his father, clearly indicate her intent to pay on the debt.

█ The record supports defendant's first two evidentiary claims: plaintiff knew of the obligation that existed between defendant and his father and she apparently thought that the obligation was a mortgage against the house. Defendant's assertion that plaintiff knew at the time of divorce that the only obligation owing on the house was the debt between defendant and his father, however, is mere supposition. At trial, plaintiff testified that she did not recall when the V.A. debt was satisfied. She testified that she first discovered

---

1. The transcript reads as follows:
   Q. Will you tell the Court as best you can what you understood the reason why you were paying Dale's parents the payments on the home?
   A. Well, I thought it was because they had a note on the home. Well, I knew there was a note, but I thought it was a mortgage.
   Q. So you thought the loan to the parents was, in fact, a mortgage on the property?
   A. Right.

2. Utah Code Ann. § 57-3-2(1) (1986) states:
   Every conveyance, or instrument in writing affecting real estate, executed, acknowledged,

or proved, and certified, in the manner prescribed by this title, and very patent to lands within this state duly executed and verified according to law, and every judgment, order, or decree of any court of record in this state, or a copy of it, required by law to be recorded in the office of the county recorder, and every financing statement which complies with § 70A-9-402 shall, from the time of filing the same with the recorder for record, impart notice to all persons of their contents. Subsequent purchasers, mortgagees, and lien holders are deemed to purchase and take with notice.

that no mortgage was recorded against the home only after defendant quitclaimed his interest to her and she applied for a second mortgage on the home. Further, defendant's constructive notice argument lacks merit: section 57-3-2(1) does not provide, even by implication, that a spouse who is awarded property under a divorce decree is, in the statute's words, "deemed to purchase and take with notice."

Further, the evidence is not clear that plaintiff intended to assume the debt between defendant and his father. Plaintiff's following testimony undermines defendant's assertion that plaintiff intended the deducted alimony monies to be paid to defendant's father:

> Q. And paragraph 9, [Mrs. Rothe], refers to a mortgage obligating you to be responsible for the mortgage due on the property, is that correct?
>
> A. Right.
>
> Q. Who was that to?
>
> A. I was not sure who it was to. I just knew that there was a mortgage owing. He had that put into the papers.
>
> . . . .
>
> Q. And for 30 or some—odd—months the money was deducted from your alimony checks, was it not?
>
> A. Yes.
>
> Q. And who did you think it was going to?
>
> A. I didn't know. He was just taking it out. . . .

At best, the evidence is conflicting as to whether plaintiff intended to pay the obligation to defendant's father pursuant to the divorce decree, despite the language obligating her only to pay existing mortgages. The court's determination that reformation was not warranted is not, therefore, clearly erroneous, but is supported by the evidence.

## PLAINTIFF'S LIABILITY ON LOAN

 Defendant also claims the court erred in ruling there was insufficient evidence to hold plaintiff liable on the debt owing to defendant's father. Plaintiff argues that defendant has no standing to assert his father's interest in having plaintiff pay the debt to his father. We agree. We affirm the trial court's refusal to modify the divorce decree to hold plaintiff responsible for the debt owed to defendant's father. The decree, therefore, is silent on payment of that debt. The agreement itself apparently only obligates defendant to pay. If there is some basis upon which defendant's father can require plaintiff to pay him, that obviously must be litigated in a separate action in which defendant's father is a party.[3]

The trial court's decision is affirmed.

BENCH and BILLINGS, JJ., concur.

---

3. Similarly, defendant's claim at trial and on appeal that the agreement with his father should be treated as an equitable mortgage is one that must be addressed in a separate action as it involves the rights of a third party, not a party to this action. In this instance, not only was defendant's father not a party, he did not even testify. It is difficult to imagine how defendant could establish the existence of an equitable mortgage lacking such testimony when there must be "a genuine and discoverable intent of the parties to create a security interest" in order to be treated as an equitable mortgage. 3 R. Powell, Powell on Real Property § 446 (1989).