**Michael J. GODFREY, Plaintiff and Appellee,**

v.

**Maria Oliva GODFREY, Defendant and Appellant.**

No. 920029–CA.

Court of Appeals of Utah.

May 21, 1993.

---

Jeff R. Thorne, Brigham City, for defendant and appellant.

Bruce W. Stratford, Ogden, for plaintiff and appellee.

Before BENCH, GARFF and JACKSON, JJ.

JACKSON, Judge:

Mrs. Godfrey appeals several rulings of the trial court: (1) the denial of her motion for continuance; (2) the assignment of a marital debt to her; (3) the valuation of stock in a closely-held business; and (4) the sufficiency of her alimony award. We affirm the lower court's denial of a continuance and vacate and remand the other rulings.

## I. FACTS

This is a divorce action following a 22-year marriage of the parties. Mr. Godfrey filed for divorce in November 1990, and the trial took place in October of the following year.

Prior to the commencement of the trial on October 10, Mrs. Godfrey's attorney made a motion for continuance, claiming that Mrs. Godfrey was too ill to attend the trial and effectively assist her counsel. The court granted a continuance until that afternoon and subsequently granted another continuance until the following morning. The next morning, Mrs. Godfrey again made a motion for continuance based on her illness. This time the court denied her request and required the parties to proceed with the trial.

Following a one-day trial, the court issued the decree of divorce, making its rulings regarding property division, allocation of debts, and alimony. Among those rulings, the court awarded Mrs. Godfrey two parcels of property, "subject to the debt thereon." The court awarded two hundred shares of stock in Godfrey's Foothill Retreat, Inc., the family-owned nursing home business, to Mr. Godfrey. However, the court chose to value the stock at $0, despite testimony from both parties to the contrary. The court then determined Mrs. Godfrey was in need of alimony, awarding her $650 per month, later to be reduced to $450 per month.

Mrs. Godfrey challenges the court's denial of a continuance. She also challenges the existence of any debt on the two parcels of property awarded her, the valuation of Mr. Godfrey's stock at $0, and the sufficiency of the alimony awarded to her.

## II. ANALYSIS

### A. Motion for Continuance

Rule 40(b) of the Utah Rules of Civil Procedure provides that, "[u]pon motion of a party, the court may in its discretion, and upon such terms as may be just, ... postpone a trial or proceeding upon good cause shown." Accordingly, "[t]he trial court has substantial discretion in deciding whether to grant continuances and will not be reversed on appeal unless it has abused that discretion by acting unreasonably."

*Hill v. Dickerson,* 839 P.2d 309, 311 (Utah App.1992) (citations omitted).

Mrs. Godfrey made several motions for continuance based on her apparent illness. She and her doctor both testified that she was experiencing persistent vomiting and diarrhea during the hours preceding the trial. However, the doctor also indicated the illness probably would not impair Mrs. Godfrey's ability to function at the trial other than by causing her some discomfort.

The court continued the trial until the morning of October 11. After hearing Mrs. Godfrey's own testimony concerning the matter, the trial court found that, "based upon the medical evidence and the Court's observation of [Mrs. Godfrey's] apparent ability to participate in the trial and assist counsel," the continuance was unnecessary. The court did make provisions to accommodate Mrs. Godfrey in case the illness forced her to leave suddenly. Moreover, the record reveals the parties adequately presented all of the issues to the trial court despite the illness. We believe the trial court acted reasonably and that Mrs. Godfrey was not prejudiced by going forward with the trial. Accordingly, we find no abuse of discretion in the court's refusal to grant further continuance of the trial.

### B. Lien on Real Estate

The trial court found that the "known" marital obligations of the parties included a "lien on the [Harper property] in the approximate amount of $24,500 owed to the Oleen Godfrey Estate." The court stated that Mrs. Godfrey would have to assume "all debts that are in the form of mortgages" on the property she takes. The court then awarded the Harper property to Mrs. Godfrey "subject to the debt thereon." Mrs. Godfrey challenges the court's finding that this obligation actually existed.

On appeal, we will not disturb the trial court's findings of fact unless they are clearly erroneous. *Elmer v. Elmer,* 776 P.2d 599, 602 (Utah 1989); *Rothe v. Rothe,* 787 P.2d 534, 535–36 (Utah App.1990). To successfully attack a trial court's findings of fact, an appellant must show the evidence is insufficient to support the findings. *Grayson Roper Ltd. v. Finlinson,* 782 P.2d 467, 470 (Utah 1989).

The only evidence that the lien on the Harper property actually existed was the testimony of Mr. Godfrey. He claimed that his father "loaned" him an inheritance of $25,000 for the purchase of a mobile home on the Harper property. When questioned about his listing $25,000 as a lien against the Harper property, Mr. Godfrey responded, "That represents the [amount] that my father loaned me that is part of the inheritance that I would get when his estate is settled." [1]

Mr. Godfrey did not produce any documentation supporting the existence of a lien. Evidently, the court simply believed Mr. Godfrey's testimony without any other evidence for support. [2] Relying only on the testimony of one who claims to be the recipient of creditor's rights is tenuous at best. Without any documentation (i.e., loan papers, mortgage or trust deeds, cancelled checks, etc.) too many questions remain. Were any funds actually delivered? If so, were the funds a loan, advance on an inheritance, or a gift? What was the amount? What were the terms of repayment and was an interest rate agreed upon? Were the funds actually expended

---

1. In essence, Mr. Godfrey is claiming that he received an advancement from his father in anticipation of the share he would inherit from his father's estate. *See* Utah Code Ann. § 75–2–110 (1993). Even if Mr. Godfrey had provided sufficient evidence that he had received an advancement on his inheritance from his father, he cannot also claim the advancement constituted a loan because the terms have mutually inconsistent definitions. *See Ned J. Bowman Co. v. White,* 13 Utah 2d 173, 369 P.2d 962, 964 (1962).

2. An exchange between Mrs. Godfrey's attorney and the court supports this conclusion:

   Mr. Hadfield: Does the court find that there has been proven a debt to the estate on the Harper property? There were no documents that were produced on that.

   The Court: I believe there would be a debt on it, yes. All debts that are in the form of mortgages and that type of thing will have to be assumed on the property she takes.

on the property in question? Was the loan or advancement to be secured by a lien against the property? Who is entitled to repayment if there is an obligation owed to the father's estate?

Mr. Godfrey claims that Mrs. Godfrey admitted to the existence of the obligation on the witness stand. However, Mrs. Godfrey was asked only if she were willing to assume "any *mortgage that does exist* on the Harper property." (Emphasis added.) Mrs. Godfrey claims no knowledge of the alleged obligation. She merely acknowledged at trial that she would pay an obligation against the property if Mr. Godfrey proved its existence.

Mr. Godfrey's bare assertion that an advancement was "loaned" to him is insufficient to support the trial court's finding that a lien obligation exists against the Harper property. Accordingly, we vacate the finding.[3]

### C. Valuation of Stock

Mrs. Godfrey also challenges the trial court's valuation of two hundred shares of stock in Godfrey's Foothill Retreat, Inc. at $0. "The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Argyle v. Argyle*, 688 P.2d 468, 470 (Utah 1984). In particular, the trial court's valuation of marital property will not be disturbed absent a clear abuse of discretion. *Id.*; *Dunn v. Dunn*, 802 P.2d 1314, 1317 (Utah App.1990); *Morgan v. Morgan*, 795 P.2d 684, 691 (Utah App.1990).

The two hundred shares of stock represented a one-fifth interest in the nursing home corporation, with the other owners being Mr. Godfrey's brother and sisters.

The corporation's largest assets (the nursing home buildings and other real property) are not owned by the corporation, but are leased to it by the estate of Mr. Godfrey's father. In light of these facts, the trial court doubted that a market existed for the sale of the stock:

> As far as the so-called going business is concerned, I don't think you can sell it. I don't think it has a market.... Anybody that would buy this would be buying ... a 20 percent interest against the 80 percent interest of the brothers and sisters. I can't imagine an outsider buying it.... I do not think you can sell it. If I take out the real estate and those things in the estate which are traceable directly to inheritance, and then I turn around on the other side and I say, well, what's the going business worth, ... and I don't know anything about any long-term enforceable leases or anything of that sort, but I don't think you can sell it for anything. I don't think it has marketability.

Despite the court's reasoning, the limited marketability of an ownership interest in a closely-held business should not mandate a finding that such an interest has no value. The trial court should have valued the marital stock within the range of values established by all the testimony. *See Morgan*, 795 P.2d at 691; *Weston v. Weston*, 773 P.2d 408, 410 (Utah App.1989). Mrs. Godfrey provided expert testimony that placed the value of the stock at $65,000. The expert applied four different valuation methods to establish a range of values between $54,000 and $78,000. Mr. Godfrey, on the other hand, provided no expert testimony on the matter. However, he admitted that he had valued his interest in the nursing home stock at $17,000 in a personal financial statement prepared in April 1991.[4] In addition, the corporation's

---

3. Mrs. Godfrey also contests Mr. Godfrey's assertion of a $14,000 debt against another piece of property awarded to her, allegedly owed to the family nursing home corporation. Mrs. Godfrey points out that this alleged obligation was unsupported by the evidence. Moreover, the trial court did not make a finding regarding this obligation. We agree that there is insufficient evidence in the record to support the existence of this claimed obligation.

4. Mr. Godfrey also argued the stock transfer was restricted and the stock could only be sold to his brother and sisters at par value, and thus, his two hundred shares had a value of only $200. However, the trial court doubted the enforceability of this requirement and gave little weight to it in valuing the stock.

own financial statements, as verified by a C.P.A., show a one-fifth interest in stockholder equity to equal about $14,130 at the close of 1990 and about $16,871 at the close of 1989.

Because the trial court's valuation of the nursing home stock does not fall within the range of these values, the trial court unreasonably and unfairly set the value at $0. This action was an abuse of discretion. Accordingly, we vacate and remand to the lower court to find a value for the nursing home stock within the range of values supported by the evidence in the record.

### D. Alimony

 Mrs. Godfrey also challenges the sufficiency of the alimony awarded to her, claiming the trial court failed to "equalize" the post-divorce standards of living of the parties and failed to properly consider established criteria for awarding alimony. We will not disturb the trial court's alimony award on appeal unless there has been "a clear and prejudicial abuse of discretion." *Chambers v. Chambers*, 840 P.2d 841, 843 (Utah App.1992); *Morgan v. Morgan*, 795 P.2d 684, 688 (Utah App.1990); *Rasband v. Rasband*, 752 P.2d 1331, 1333 (Utah App.1988).

Indeed, Utah courts have held that "[a]n alimony award should, after a marriage ... and to the extent possible, equalize the parties' respective standards of living and maintain them at a level as close as possible to that standard of living enjoyed during the marriage." *Gardner v. Gardner*, 748 P.2d 1076, 1081 (Utah 1988); *see also Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985); *Roberts v. Roberts*, 835 P.2d 193, 198 (Utah App.1992); *Bell v. Bell*, 810 P.2d 489, 491 (Utah App.1991). In light of this goal, the trial court must consider: "(1) the financial conditions and needs of the receiving spouse; (2) the ability of the receiving spouse to produce a sufficient income; and (3) the ability of the supporting spouse to provide support." *Roberts*, 835 P.2d at 198; *see also Jones*, 700 P.2d at 1075; *Chambers*, 840 P.2d at 843; *Schindler v. Schindler*, 776 P.2d 84, 90 (Utah App.1989).

Failure to consider these factors in fashioning an alimony award constitutes an abuse of discretion. *Bell*, 810 P.2d at 492. Accordingly, "the trial court must make sufficiently detailed findings of fact on each factor ... unless the record is clear and uncontroverted" and capable of supporting only a finding in favor of the trial court's award. *Id.*; *see also Chambers*, 840 P.2d at 843; *Roberts*, 835 P.2d at 198.

The only findings of the trial court related to the alimony award include the findings that Mrs. Godfrey "is a well and able bodied person employed with Brigham City as an animal control officer and earns $23,000 per year; that [Mr. Godfrey] is employed at Godfrey's Foothill Retreat[,] earns $45,000 per year[, and,] based upon bankruptcy and business failures, [his] income ability is restricted." The trial court later concluded that Mrs. Godfrey "is in need of alimony in the amount of $650.00 per month."

These findings are clearly insufficient to allow us to ensure that the trial court's discretionary determination was rationally based on the three enumerated factors.[5] Accordingly, we hold that the trial court abused its discretion in fashioning the alimony award. We vacate the trial court's determination of alimony and remand for further findings that will support an equitable award of alimony.

### III. CONCLUSION

We affirm the denial of the motion for continuance. We vacate the rulings concerning the marital debt, the valuation of the stock, and the alimony award. We remand for a revaluation of the nursing home stock in accordance with the evidence in the record and for further findings and conclusions in support of the alimony award.

BENCH and GARFF, JJ., concur.

---

5. We decline to use the record and to apply the three factors as a matter of law on appeal.