Arvilla **FINLAYSON**, Plaintiff, Appellant, and Cross–Appellee,

v.

Roger **FINLAYSON**, Defendant, Appellee, and Cross–Appellant.

No. 920411–CA.

Court of Appeals of Utah.

April 13, 1994.

Rehearing Denied June 15, 1994.

Sharon A. Donovan, Kent M. Kasting, argued, and Shannon W. Clark, Dart, Adamson & Kasting, Salt Lake City, for appellant.

William R. Russell, argued, Salt Lake City, for appellee.

Before BENCH, BILLINGS and DAVIS, JJ.

## OPINION

DAVIS, Judge:

Arvilla Finlayson (Wife) and Roger Finlayson (Husband) each appeal from a final divorce order entered March 31, 1992. We affirm in part, reverse in part, and remand.

## FACTS

The couple married on September 4, 1964. After approximately twenty-six years, they separated December 21, 1990 and divorced three months later. They had four children, only one of whom was a minor at the time of the divorce.

Two years prior to the marriage, Husband's father gave him $14,800.84 (the Hallmark Money) to assist Husband in purchasing and buying inventory for a Hallmark gift shop. One year prior to the marriage, Husband purchased the shop and started up the business. Once the couple was married, they ran the business together.

For the first five years of the marriage, Husband's parents allowed the couple to live rent-free in an apartment they owned. Later, the couple purchased a home and relied on the shop for income to pay the day-to-day family expenses. Husband's parents owned a vacant lot (the Lot) next to the parties' marital home. The older couple planned to eventually build a home on the Lot. When Husband's father died in 1969, Husband's mother (Mina) abandoned the plan. In 1978, Husband as trustee and Mina as settlor signed and executed a warranty deed to the Lot conveying it to Husband and Wife as tenants in common without any reservations. The deed was later recorded. Over the years, Husband and Wife maintained and weeded the Lot and paid $6000 in real estate taxes from marital assets.

At trial, Husband claimed he and Mina transferred the Lot to Wife and himself so that he could more easily sell the Lot for Mina. However, Husband never listed the Lot for sale and he received only one offer on it. Husband and Mina each testified that they never intended to transfer the Lot to the couple.

In 1985, the couple sold the shop for $250,-000 at $50,000 down payment and $6000 per month on the balance. Husband deposited the down payment in a local thrift and loan, which later failed. The parties recouped about seventy percent of their initial deposit. In 1988, the couple paid off the mortgage on the marital home.

In early December of 1990, Husband told Wife to file for divorce. He then withdrew money from the couple's savings account and paid it to Mina, claiming he was making

payments on the "loans" for the Hallmark shop, purportedly made in 1962, and for the rent-free apartment purportedly made in 1964. Between December 11 and December 14, 1990, Husband paid Mina $57,285.03 from the marital account. At the time, Mina was approximately ninety-two years old, and Husband was one of two surviving apparent heirs. Upon learning of these withdrawals, Wife withdrew the remaining $35,488.89 to prevent Husband from making further withdrawals.

In December 1990, Wife filed for divorce. The trial was held October 17 and 18, 1991.

During trial, Husband produced two notes he claimed he prepared, signed, and gave to his father on September 4, 1962 (the Hallmark Note) and September 4, 1964 (the Rent Note) respectively. Husband testified he prepared and signed each of the notes on the dates as stated thereon. He testified he had not again seen either of these notes until shortly before the divorce was filed in December of 1990. Mina testified differently. She said she found the notes about eighteen years ago, two or three years after her husband's death, and that she had given them to her son (Husband) several years ago. Neither of the notes was signed by Wife and she claimed she never saw them until the divorce.

Husband testified he had discussed with Wife the fact that the Hallmark Money was a debt and that she urged him to repay the debt. Mina also testified that she discussed the debt with Wife and that she told her she expected the money to be repaid. Wife also testified that she had urged Husband to repay the debt.

At the conclusion of the trial, the court ruled from the bench regarding division of marital property, custody, support obligations, and allocation of debt and attorney fees. Later, the court heard Wife's objections to the proposed findings of fact, conclusions of law, and decree of divorce that Husband's attorney prepared. At the conclusion of that hearing, the court made additional findings and clarifications. Wife then moved for a new trial. The court denied the motion.

The court concluded that the money Husband's father gave him in 1962 for the Hallmark shop constituted a loan rather than a gift. The court then approved Husband's disposition of the $57,285.03 that he withdrew from the marital account and paid to Mina for the Hallmark "loan." The trial court "awarded his withdrawals partially as a separate award of marital property and partially as joint marital funds to pay joint marital obligations." Of the total amount Husband withdrew from the account, the trial court charged him with only $16,731.29, finding that Husband properly paid $40,553.74 of the total to Mina. The court awarded Wife the $35,488.89 she withdrew from the account.

The trial court ruled that the note for the rent on the apartment would have represented a marital debt but was unenforceable because the statute of limitations had run, and the obligation was, therefore, not a debt at all.

The trial court concluded that the Lot was not marital property because Mina never intended to give it to the couple. The trial court found that "marital funds were used to pay the property taxes for such parcel as they came due." However, the trial court considered the $6000 the couple spent in property taxes to be a "wash" because of the two unpaid notes. "As such, the Court finds that said real property is not within the marital estate. Each of the parties should be ordered to execute a Quit–Claim deed in favor of Mina Finlayson, her successor, or her designated agent."

The trial court determined that Husband should pay $500 of $2599.15 incurred by Wife in attorney fees as a result of Husband's noncompliance with interim orders regarding custody and visitation, the sale of the home and "other issues." Although the evidence was undisputed that Wife incurred the fees as a result of Husband's noncompliance, the trial court made no findings connecting the amount claimed with Husband's noncompliance or supporting its reduction of the requested fees to only $500. Nor did the trial court make findings regarding the reasonableness of the fees charged.

Wife appeals and Husband cross appeals.

## MARITAL PROPERTY LAW

"There is no fixed formula upon which to determine a division of assets or debts in a divorce action." *Rappleye v. Rappleye*, 855 P.2d 260, 263 (Utah App.1993) (citing *Watson v. Watson*, 837 P.2d 1, 5 (Utah App.1992)). Moreover, the trial court "has considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity." *Naranjo v. Naranjo*, 751 P.2d 1144, 1146 (Utah App.1988) (citing *Savage v. Savage*, 658 P.2d 1201, 1203 (Utah 1983)).

" '[E]ach party should,. in general, receive the real and personal property he or she brought to the marriage or inherited during the marriage.' " *Mortensen v. Mortensen*, 760 P.2d 304, 306 (Utah 1988) (quoting *Preston v. Preston*, 646 P.2d 705, 706 (Utah 1982)); *accord Rappleye*, 855 P.2d at 263. This includes any appreciation of the separate property. *Dunn v. Dunn*, 802 P.2d 1314, 1320 (Utah App.1990). "Exceptions to this general rule include whether the property has been commingled, whether the other spouse has by his or her efforts augmented, maintained, or protected the separate property, and whether the distribution achieves a fair, just, and equitable result." *Id.* (citing *Burt v. Burt*, 799 P.2d 1166, 1168 (Utah App.1990)).

"To permit appellate review of the property distribution, the distribution must be based upon adequate factual findings and must be in accordance with the standards set by this state's appellate courts." *Id.* at 1317. This court will approve changes in a trial court's property and debt distribution " "only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.' " *Watson*, 837 P.2d at 5 (quoting *Naranjo*, 751 P.2d at 1146).

### HALLMARK MONEY

Wife claims the trial court erred in determining that (1) the money Husband's father gave him two years prior to the marriage was a loan and not a gift; (2) the money represented a marital obligation; and (3) Husband properly paid a significant amount of the marital estate's liquid assets to settle the debt.

### Hallmark Note

Before we can reach these issues, we address Wife's claim, raised for the first time on appeal, as to whether the Hallmark Note was prepared in 1962 as it purports to be, or whether Husband prepared it later. The Hallmark Note contains two addresses, both of which have zip codes of 84105. Wife asks this court to take judicial notice that zip codes were not introduced to the public until July 1, 1963.

"Reply briefs shall be limited to answering any new matter set forth in the opposing brief." Utah Rule App.P. 24(c). Moreover, appellate courts of this state do not consider new evidence on appeal. *Low v. Bonacci*, 788 P.2d 512, 513 (Utah 1990). Thus " 'issues not raised in the trial court in timely fashion are deemed waived, precluding [the appellate court] from considering their merits on appeal.' " *LeBaron & Assocs. v. Rebel Enters., Inc.*, 823 P.2d 479, 483 (Utah App.1991) (quoting *Salt Lake County v. Carlston*, 776 P.2d 653, 655 (Utah App.1989)).

Utah Rule of Evidence 201(b) acknowledges this court's discretion to take judicial notice of a fact "not subject to reasonable dispute" because the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Mel Trimble Real Estate v. Monte Vista Ranch, Inc.*, 758 P.2d 451, 456 (Utah App.), (regarding appellate court's discretion to take judicial notice), *cert. denied*, 769 P.2d 819 (Utah 1988). Judicial notice is taken on appeal only where there is a "compelling 'countervailing principle' to be served." *Id.* With very limited exceptions, judicial notice should not be used "to get around the rule precluding raising issues for the first time on appeal." *Id.* Further, mandatory judicial notice is limited to the trial court. *Id.*

Here, the authenticity of the Hallmark Note alone does not resolve the larger issue

of whether the Hallmark Money represented a loan, a gift, or otherwise constituted an obligation of the marital estate. Moreover, numerous policies support our refusal to consider this issue: (1) the trial court is better equipped to take judicial notice and to hear new evidence; (2) the opposing party is entitled to an opportunity to be heard on the subject, Utah R.Evid. 201(e); (3) only the trial court can weigh the conflicting evidence and determine whether the Hallmark Money represented a loan or a gift; and (4) the trial court had other evidence supporting its conclusion that the money was a loan.

We therefore decline to take judicial notice, given there is "no compelling 'countervailing principle' to be served" in taking such notice and given the trial court supported its conclusion with evidence not related to the Hallmark Note. *Mel Trimble Real Estate,* 758 P.2d at 456.

### Gift or Loan

Wife claims the trial court clearly erred in finding that the Hallmark Money represented a loan rather than a gift.

■ Whether moneys received from close family members represent a gift or a debt can be problematic. *See, e.g., Baker v. Baker,* 866 P.2d 540, 543 (Utah App.1993) (affirming finding that money represented loan where both husband and his parents testified as such and where wife offered evidence of payment history of loan); *Godfrey v. Godfrey,* 854 P.2d 585, 587–88 (Utah App.1993) (reversing property award "subject to the debt thereon" where issue of whether lien existed on property supported only by husband's testimony that his deceased father loaned him portion of his inheritance). However, given the trial court's unique role in weighing the evidence and judging the credibility of the witnesses, we affirm its findings where they are adequate and supported by sufficient evidence. *Baker,* 866 P.2d at 543.

■ Here, the trial court, in concluding that the Hallmark Money represented a loan, relied on the following: (1) the signed and dated note; (2) Husband's testimony that he discussed the debt with Wife and that she urged Husband to repay it; (3) Mina's testi-

mony that she expected the money to be repaid; (4) Mina's testimony that she had discussed the debt with Wife; and (5) Wife's testimony that she urged Husband to repay debt.

Because the court made adequate findings supported by sufficient evidence, we affirm its conclusion that the Hallmark Money represented a debt rather than a gift.

### Marital or Personal Debt

Wife claims the trial court erred in determining that the Hallmark Money became a marital debt. She also claims the trial court erred in charging Husband with only $16,-731.29 of the $57,285.03 which he withdrew from the marital account and in finding that he had properly paid to Mina $40,553.74 of this amount. Wife thus challenges the court's approval of Husband's paying a significant amount of the liquid marital assets to repay this loan.

■ Here, the court found that the Hallmark Money served to finance the chief asset of the marriage and that most of that asset's appreciation took place after the marriage because of the efforts of both parties. *See Dunn v. Dunn,* 802 P.2d 1314, 1320 (Utah App.1990). Thus, the court did not abuse its discretion in concluding that the debt was marital rather than personal because it supported this conclusion with adequate findings supported by sufficient evidence.

### Distribution of Marital Assets

■ Wife also claims that even if the money were a loan and were a marital debt, she should have been left with her normal remedies as an individual debtor. She claims the court erred in allowing Husband to use much of the estate's liquid assets to discharge the debt. Thus, she claims the trial court abused its discretion in a de facto enforcement of what may well be a legally unenforceable debt, particularly when "enforcement" meant paying much of the liquid marital estate to a ninety-two year old woman whose son (Husband) would likely be one of two surviving heirs. Moreover, Wife argues that the trial court should have considered her needs and her ability to support herself.

In determining whether a certain division of property is equitable, neither the trial court nor [the appellate court] considers the property division in a vacuum. The amount of alimony awarded and the relative earning capabilities of the spouses to support themselves after the divorce are pertinent to an equitable division of the fixed assets of the marriage.

*Newmeyer v. Newmeyer,* 745 P.2d 1276, 1279 n. 1 (Utah 1987); *accord Noble v. Noble,* 761 P.2d 1369, 1373 (Utah 1988).

Here, the court found that each party had a relatively equal ability to support him or herself, yet it allowed Husband to unilaterally use a large share of the liquid assets to discharge the debt to Mina thereby effectively determining that the debt was enforceable. The court made no findings, however, regarding the propriety or effect of using liquid assets of the marital estate to discharge the debt. Accordingly, we hold that the trial court abused its discretion in crediting Husband's payments to Mina as a discharge of a marital debt. Given the court's findings regarding the parties' relatively equal ability to support themselves, we remand for the trial court to equally distribute the liquid assets of the marital estate, including all amounts Husband withdrew from the marital account and paid to Mina.

■ Of course, we do not consider whether the Hallmark debt is legally enforceable because the other party to the debt, in this case Mina as settlor of her husband's estate, is not a party to this action. *See Openshaw v. Openshaw,* 80 Utah 9, 12 P.2d 364, 365 (1932) ("A decree in favor of a person who is not a party to the action or proceeding is void because the court has no jurisdiction to make it.").

### RENT NOTE

Husband claims the trial court erred in not determining that the rent note was a marital obligation.

■ Again, we consider a benefit conferred upon the couple by a close family member. *See, e.g., Baker v. Baker,* 866 P.2d 540, 543 (Utah App.1993); *Godfrey v. Godfrey,* 854 P.2d 585, 587–88 (Utah App.1993).

We emphasize that in such problematic situations, the trial court must provide detailed findings explaining precisely what evidence it relied on in determining whether the benefit was a gift or a loan and whether it was conferred upon the individual or the couple.

■ The character of this "debt" is distinct from that of the Hallmark Money, given that the Hallmark Money can be traced into a major asset of the marriage. Also, Husband produced no evidence suggesting that his parents ever attempted to enforce the debt. Most importantly, however, the court determined the note did not represent a marital obligation because it was unenforceable. Thus, the court correctly determined that Husband failed to meet his burden to prove that the benefit of the rent-free apartment constituted a marital debt. *See Godfrey,* 854 P.2d at 587–88.

In short, the court's ultimate conclusion, that the benefit of a rent-free apartment did not constitute a marital debt, was correct. However, we do not agree with the ground the trial court relied on in reaching this conclusion. *See Hagan v. Hagan,* 810 P.2d 478, 482 (Utah App.1991) (we may affirm trial court ruling on any proper ground).

Again, we do not consider whether the rent "debt" is legally enforceable against either one or both of the parties because the claimant is not a party to this action.

### THE LOT

Wife claims the court erred in determining that the Lot was not marital property and in ordering the parties to execute a quit claim deed.

"Both this court and the Utah Supreme Court have long held that once a court has determined that something is marital property, the court may distribute it equitably, notwithstanding which party's name appears on the title." *Hoagland v. Hoagland,* 852 P.2d 1025, 1028 (Utah App.1993) (citations omitted). "The trial court is empowered to make such distributions as are just and equitable, and may compel such conveyances as are necessary to that end." *Jackson v. Jackson,* 617 P.2d 338, 340–41 (Utah 1980).

■ Even so, absent some kind of intervention, a divorce action deals only with rights as between the parties to the marriage and does not operate to assert the rights of a third party. *Sundquist v. Sundquist,* 639 P.2d 181, 186 (Utah 1981); *Sadleir v. Knapton,* 5 Utah 2d 26, 296 P.2d 278, 280 (1956); *Openshaw v. Openshaw,* 80 Utah 9, 12 P.2d 364, 365 (1932).

■ In claiming that the trial court clearly erred in determining that the Lot was not marital property, Wife has adequately marshaled the evidence. *See Barnes v. Barnes,* 857 P.2d 257, 259 (Utah App.1993). Here, the trial court found that (1) Husband as trustee and Mina as settlor signed and executed a warranty deed to the Lot conveying it to Husband and Wife as tenants in common without any reservations; (2) the deed was later recorded; (3) Husband and Wife maintained and weeded the Lot; (4) they paid $6000 in real estate taxes; (5) Husband testified that Mina never intended to give the Lot to the parties; (6) Mina testified that she never intended to give the Lot to the parties; (7) the couple's son testified that he thought the Lot had not been given to the parties; and (8) the couple's payment of the property taxes constituted a "wash" given their debts to Husband's parents.

■ The finding regarding the property taxes being a "wash" because the parties may have had outstanding debts to Mina does not resolve the issue of who owns the Lot. Moreover, the evidence of Mina's ownership is insufficient to override the evidence of the parties' ownership, including the plain language of the warranty deed, particularly given Husband's dual roles as seller/trustee and purchaser. Finally, the court clearly erred in ordering the parties to execute a quit claim deed to Mina, given that she was not party to the action. *See Openshaw,* 12 P.2d at 365. We therefore reverse the court's conclusion that the Lot was not marital property and reverse its order regarding the quit claim deed. We remand for the court to make an equitable division of the Lot as a marital asset.

## ATTORNEY FEES

Wife claims the trial court erred in awarding her only $500 of the $7142.50 in attorney fees and costs requested when Husband's actions and inactions caused her to incur $2599.15 of the fees.

■ A trial court has discretion to award attorney fees. Utah Code Ann. § 30-3-3 (Supp.1993); *Bell v. Bell,* 810 P.2d 489, 493–94 (Utah App.1991). Where the award is based on need, the trial court must support the award with adequate findings detailing the reasonableness of the amount awarded and the need of the receiving party. *Porco v. Porco,* 752 P.2d 365, 368 (Utah App.1988) (fees awarded based in part on other party's "obstreperous behavior"). Where the court sua sponte chooses to reduce the amount of fees requested, the court must make findings justifying the reduction. *Rappleye v. Rappleye,* 855 P.2d 260, 265 (Utah App.1993); *Haumont v. Haumont,* 793 P.2d 421, 426 (Utah App.1990).

■ Where a court awards attorney fees incurred by one party seeking to enforce a court order, a court may disregard the financial need of the moving party. *Beardall v. Beardall,* 629 P.2d 425, 427 (Utah 1981) (attorney fees affirmed absent evidence of need where one spouse had to bring three proceedings to compel other spouse to comply with provision of decree); *Stuber v. Stuber,* 121 Utah 632, 244 P.2d 650, 652 (1952) ("There can be no doubt that attorney's fees are allowable in actions of this type."); *Tribe v. Tribe,* 59 Utah 112, 202 P. 213, 216 (1921) (court has discretion to award attorney fees in proceeding to enforce provisions of decree "whether for contempt or otherwise"); *Lyngle v. Lyngle,* 831 P.2d 1027, 1030 & n. 4 (Utah App.1992) (in action to enforce its own orders, court has discretion to award attorney fees).

■ Here, the court based its award of attorney fees on the fact that Wife incurred certain fees because of Husband's noncompliance with its interim orders. While the court gave few specifics, it mentioned Wife had incurred attorney fees for "unnecessary proceedings brought on by his failure to let her see the child and this type of thing." The

court also mentioned Husband's recalcitrance "in pursuing the sale of the home and other issues." Finally, the court found that "the evidence was strong that he frequently did not carry out intentions ... his or other people's as for example the sale of the house as ordered by the Court." Wife submitted undisputed evidence that she incurred attorney fees of $2099.15 as a result of Husband's noncompliance. However, the court awarded only $500 of the requested amount.

Here, the court correctly based its award of attorney fees on Husband's noncompliance with its interim orders. However, the court erred in not making findings justifying its sua sponte reduction of the fees. We therefore remand the issue of attorney fees for the court to make complete findings regarding the amount ordered, and to make the necessary adjustments in the amount ordered.

 Given that the court awarded no attorney fees at trial based on need, we decline to award attorney fees on appeal. *See Bell v. Bell,* 810 P.2d 489, 494 (Utah App.1991); *Burt v. Burt,* 799 P.2d 1166, 1171 (Utah App.1990).

## CONCLUSION

In conclusion, we (1) decline to take judicial notice of the circumstances surrounding the creation of the Hallmark Note; (2) affirm the trial court's conclusion that the Hallmark Money represented a marital obligation rather than a gift; (3) reverse the court's approval of the distribution of the money Husband withdrew from the marital account and remand for equal redistribution of those funds; (4) decline to consider whether the Hallmark debt is legally enforceable; (5) reverse the conclusion regarding the rent note's status as a marital obligation; (6) reverse the court's ruling regarding ownership of the Lot; (7) reverse the court's order to quit claim the Lot; (8) remand for equitable distribution of the Lot as a marital asset; (9) remand the issue of attorney fees at trial for noncompliance for the court to make more complete findings and to adjust its order; and (10) award no attorney fees on appeal.

BILLINGS, J., concurs.

BENCH, Judge (concurring and dissenting):

I concur in the main opinion's discussion of the Hallmark Money and the Lot. I dissent, however, both to the result and the analysis of the Rent Note and Attorney Fees.

### Rent Note

The main opinion concludes that the trial court was correct in ruling that the rent note was not a marital obligation. Contrary to the main opinion's contention, the trial court expressly found that the rent note was a marital obligation: "With reference to the 'monies for rent' note, this loan was made during the marriage, with a fixed interest at six percent. It was intended that it would eventually be paid back." The main opinion therefore errs by holding that the trial court correctly concluded that the rent note did not constitute a marital obligation, since the court actually held that it was a marital obligation.

As with the Hallmark Note, however, the trial court erred by injecting into the analysis of the rent note the notion of enforceability. A trial court may not determine the enforceability or unenforceability of a marital debt in a divorce proceeding. *See, e.g., Gambles v. Perdue,* 175 Mont. 112, 572 P.2d 1241, 1243 (1977) (contracting obligee cannot be deprived of recourse against contracting obligor by substitution of debtors without obligee's consent). The reason the court is not vested with this authority is because not all the parties to the debt are necessarily before it. *See, e.g., Openshaw v. Openshaw,* 80 Utah 9, 12, 12 P.2d 364, 365 (1932); *Broadway Drug Store of Galveston, Inc. v. Trowbridge,* 435 S.W.2d 268 (Tex.Civ.App.1968).

Because the trial court found that the rent note was a marital obligation, and Wife has not properly challenged the finding by marshaling the evidence, this court is obligated to uphold the finding. *See Ohline Corp. v. Granite Mill,* 849 P.2d 602, 604 (Utah App. 1993) (appellate court assumes record supports findings where appellant has failed to marshal evidence). However, because the trial court erred, as a matter of law, in holding that the rent note was unenforceable,

I would reverse that portion of the trial court's ruling.[1]

## Attorney Fees

The main opinion concludes that the trial court correctly awarded attorney fees based on "Husband's noncompliance with its interim orders." The main opinion then concludes that the trial court erred only in not making adequate findings to justify its sua sponte reduction in the award. The main opinion therefore remands the issue of attorney fees to allow the trial court to make findings on this limited question. By taking this approach, I believe the main opinion has placed the proverbial cart before the horse.

In Utah, as well as in virtually all American jurisdictions, an award of attorney fees can only be made where it is authorized by statute or by an agreement between the parties. *See Turtle Management Inc. v. Haggis Management Inc.*, 645 P.2d 667, 671 (Utah 1982). Since there was no agreement between the parties on attorney fees, the trial court could only award attorney fees pursuant to statute. While the trial court cites several reasons for awarding attorney fees, it did not specify the legal basis for its award.[2] I would therefore vacate the award of attorney fees and remand the issue to the trial court for findings as to the legal basis for its award. Only if fees are justified under a statute, do the reasons for the reduction in the fees requested become an issue.

---

1. At some future time Mina may decide to try to collect on the rent note against one or both of the parties. At that time, Wife would be entitled to plead defenses such as the statute of limitations, and the enforceability of the rent note may be determined.

2. *See, e.g.,* Utah Code Ann. § 30–3–3 (Supp.1993) (attorney fees may be awarded in divorce proceedings); *id.* § 78–27–56 (1992) (attorney fees may be awarded to prevailing party where "the action or defense to the action was without merit and not brought or asserted in good faith"); *id.* § 78–32–11 (1992) (attorney fees may be awarded in contempt proceedings).